## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION, and<br>PARKER INTANGIBLES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SCHLEGEL ELECTRONIC MATERIALS, INC.,<br><br>Defendant.<br><br>SCHLEGEL ELECTRONIC MATERIALS, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>PARKER-HANNIFIN CORPORATION,<br><br>Counter-Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 1:07-cv-266<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ANSWER OF PARKER-HANNIFIN CORPORATION
### TO DEFENDANT'S COUNTERCLAIMS

Plaintiff and Counter-Defendant, Parker-Hannifin Corporation (hereinafter "Parker"), hereby answers the counterclaims filed by Defendant and Counterclaimant, Schlegel Electronic Materials, Inc. (hereinafter "Schlegel") as follows:

### COUNTERCLAIMS

19.    Parker is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the Counterclaims and they are therefore denied.

20.     Parker admits the allegations contained in Paragraph 20 of the Counterclaims.

### Jurisdiction And Venue

21.     Parker admits the allegations contained in Paragraph 21 of the Counterclaims.

22.     Parker admits the allegations contained in Paragraph 22 of the Counterclaims.

### Schlegel's Patents

23.     Parker admits that United States Patent No. 4,857,668 (hereinafter "the '668 patent") was issued on August 15, 1989, but is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that it was duly and legally issued and therefore denies same.  Parker admits that the '668 patent is owned by Schlegel.

24.     Parker admits that United States Patent No. 5,045,635 (hereinafter "the '635 patent") was issued on September 3, 1991, but is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that it was duly and legally issued and that it is owned by Schlegel and therefore denies same.

25.     Parker admits that United States Patent No. 5,105,056 (hereinafter "the '056 patent") was issued on April 14, 1992, but is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that it was duly and legally issued and that it is owned by Schlegel and therefore denies same.

26.     Parker denies each and every allegation contained in Paragraph 26 of the Counterclaims.

27. Parker denies each and every allegation contained in Paragraph 27 of the Counterclaims.

28. Parker denies each and every allegation contained in Paragraph 28 of the Counterclaims.

29. Parker denies each and every allegation contained in Paragraph 29 of the Counterclaims.

30. Parker denies each and every allegation contained in Paragraph 30 of the Counterclaims.

## Declaration Of Invalidity

31. Parker denies each and every allegation contained in Paragraph 31 of the Counterclaims.

## Affirmative Defenses To Schlegel's Counterclaims

32. Schlegel is barred from asserting the '668 patent against Parker and Parker's products and/or recovering damages for same because Schlegel disclaimed and dedicated to the public following issuance of the '668 patent any and all relevant subject matter.

33. Schlegel is barred from asserting the '668 patent against Parker and Parker's products and/or recovering damages for same under the doctrine of equitable estoppel.

34. Schlegel is barred from asserting the '668, '635 and/or '056 patents against Parker and Parker's products and/or recovering damages for same under the doctrine of laches.

35. There is no infringement of the '668 patent to the extent that one or more of Parker's products are licensed by Schlegel under the '668 patent. The Patent License Agreement between Schlegel and Parker's predecessor in interest is attached hereto as Exhibit A.

36. Upon information and belief, the claims of Schlegel's '668, '635 and/or '056 patents are invalid for failure to satisfy the requirements of the United States patent laws, 35 U.S.C. §§ 101 et seq., including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112.

37. Upon information and belief, Schlegel is estopped from asserting the '668, '635 and '056 patents against Parker's products and/or recovering damages by virtue of amendments and statements made during the course of prosecution of the '668, '635 and '056 patents from obtaining any construction of the claims of these patents that could cover any of Parker's products and the methods by which those products are made.

38. On information and belief, Schlegel has failed to comply with the provisions of 35 U.S.C. § 287(a) and is therefore barred from recovery of any damages prior to service of the Complaint.

39. Schlegel is barred under 35 U.S.C. § 286 from recovering any damages for activity that occurred more than six (6) years prior to the filing of its Counterclaims.

### **Prayer For Relief**

WHEREFORE, Plaintiff and Counter-Defendant, Parker-Hannifin Corporation prays that Schlegel's Counterclaims be dismissed with prejudice, that Schlegel take nothing by reason of its Counterclaims, that Parker be awarded the relief sought in its First Amended Complaint, its attorneys' fees, costs and expenses in this action, and that

the Court grant Parker such other and further relief as the Court may deem just and proper.

        Respectfully submitted

        **CONNOLLY BOVE LODGE & HUTZ, LLP**

By:   /s/ *Ryan P. Newell*
      Rudolf E. Hutz (#484)
      Francis DiGiovanni (#3189)
      Ryan P. Newell (#4744)
      The Nemours Building
      1007 N. Orange Street
      Wilmington, DE 19899
      Phone (302) 658-9141
      rhutz@cblh.com
      fdigiovanni@cblh.com
      rnewell@cblh.com

      *Attorneys for Plaintiffs*

Dated: October 1, 2007

## **CERTIFICATE OF SERVICE**

   I hereby certify that October 1, 2007, a true copy of the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

    George Pazuniak
    Anna Martina Linnea Tyreus
    James Michael Lennon
    Stephen James MacKenzie
    Womble Carlyle Sandridge & Rice
    222 Delaware Avenue
    Wilmington, Delaware 19801

    */s/Ryan P. Newell*
    Ryan P. Newell (#4744)
    rnewell@cblh.com

# EXHIBIT A

**PATENT LICENSE AGREEMENT**

THIS AGREEMENT is made and entered into this 23rd day of December 1992 by and between **Schlegel Corporation**, a New York corporation, with principal business offices at 1555 Jefferson Road, Rochester, New York ("Schlegel") and **Chomerics, Inc.**, a Delaware corporation, with principal business offices at 77 Dragon Court, Woburn, Massachusetts ("Chomerics").

**W I T N E S S E T H :**

WHEREAS, Schlegel represents that it has developed an electromagnetic interference shielding gasket and has acquired know-how and other proprietary technology related thereto; and

WHEREAS, Schlegel further represents that one (1) or more embodiments of said electromagnetic interference shielding gasket are disclosed and claimed in U.S. Patent #4,857,668 issued August 15, 1989, in the name of Samuel S. Buonanno as inventor, Schlegel Corporation as assignee and entitled "Multi-Function Gasket" and any other foreign filings of said patent; and

WHEREAS, Schlegel warrants that it is the sole owner of the entire right, title and interest in and to the aforesaid Patent and in said know-how and other proprietary technology and has the right to grant the license set forth in this Agreement; and

WHEREAS, Chomerics represents that it is in the business of manufacturing and marketing electromagnetic interference gasket products for use in the industrial Products Market as defined herein; and

WHEREAS, Chomerics desired to obtain a nonexclusive license under said U.S. Patent #4,857,668 and any other foreign

filings of said patent to manufacture, use and sell the Licensed Products as defined herein to the Industrial Products Market;

NOW, THEREFORE, for and in consideration of the mutual covenants herein set forth, the parties agree as follows:

## ARTICLE I.   DEFINITIONS

(a) <u>Industrial Products Market</u> shall mean the United States and Canada manufacturing industry for the production of equipment and similar devices, the operation of which may be enhanced by the use of electromagnetic interference shielding gaskets, including, but not limited to, manufacturers, as well as direct and indirect suppliers to that industry.

(b) <u>Licensed Patent</u> shall mean U.S. Patent #4,857,668 issued August 15, 1989, and Canadian Patent #1,309,486 issued October 27, 1992, entitled "Multi-Function Gasket", and any continuations, divisions, continuations-in-part, reissue or substitutions for said Patent and any patents issuing thereon; and any Letters Patent issuing upon said applications and reissues of or patents of addition relating thereto and any other foreign filings of said Patent.

(c) <u>Licensed Product(s)</u> shall mean those products, the manufacture, use or sale of which would infringe one or more claims of the Licensed Patent, including, but not limited to, products sold under the trade name "Soft Shield II".

(d) <u>Technology</u> shall mean Schlegel's know-how and other proprietary information relating to the design and manufacture of electromagnetic interference shielding gasket covered by the Licensed Patent, including, but not limited to, materials, formulations, profiles, tooling and specifications, as

- 2 -

well as any improvements thereof or thereto occurring during the term of this Agreement.

## ARTICLE II.  LICENSE GRANT

(a)  Subject to Article 1(b) hereof, and except as provided below, Schlegel hereby grants to Chomerics a nonexclusive right and license of the Licensed Patent to make, use and sell Licensed Products to the Industrial Products Market. Chomerics shall not have the right to manufacture Licensed Products in the United States, except those sold to the Industrial Products Market.

(b)  Schlegel expressly reserves to itself, and any company it controls, the right to manufacture, use and sell products which may be covered in whole or in part by the Licensed Patent in all markets and for all purposes, uses and applications, including the Industrial Products Market, and to otherwise commercialize or otherwise exploit the Licensed Patent as it, in its sole discretion, sees fit.

(c)  The parties may, from time to time, enter into negotiations for expanding the grant of Article II(a) into different markets and/or different applications.  Any such expansion will be the subject of a separate or addendum agreement in writing supported by separate consideration.

## ARTICLE III.  TECHNOLOGY AND IMPROVEMENT

(a)  Schlegel shall not be required, as part of its obligations under this Agreement, to transfer any Technology to Chomerics.  Any Technology transfer shall be addressed under a separate agreement in writing supported by separate consideration if and when the parties mutually agree that such a transfer is appropriate.

(b) Any inventions, patents and know-how derived from Chomerics' own development work relating to Licensed Products shall be the sole and exclusive property of Chomerics, and no license, implied or otherwise, is granted to any other party.

## ARTICLE IV. PATENT MARKING

(a) Chomerics agrees that all advertising and promotional literature for the Licensed Products shall include a notice taking the following form or its direct equivalent:

> Licensed by Chomerics, Inc. under U.S. Patent #4,857,668 and Canadian Patent #1,309,486.

## ARTICLE V. ROYALTIES

In consideration for the rights and license granted under this Agreement, Chomerics agrees to pay Schlegel, upon the signing of this Agreement, a one-time royalty of Fifty Thousand and No/100 Dollars ($50,000.00) for prior and future manufacture use and sale of the Licensed Product "Soft Shield II". With regard to any other Licensed Products, Chomerics agrees to pay Schlegel a royalty payment of three percent (3%) of the Net Selling Price of such Products, which payment shall be remitted quarterly, together with a statement detailing Chomerics' calculation of the payment. For the purpose of this Agreement, "Net Selling Price" shall mean the full amount paid to Chomerics by purchasers less any returns and allowances; freight charges, sales, excise, value added or use taxes; trade and cash discounts. In the case of a sale in which a Licensed Product is only one (1) component of an assembly, kit or system, the Net Selling Price of such component shall be determined by multiplying the Net Selling Price of said entire assembly, kit or system by the ratio which the standard factory cost of said

component bears to the standard factory cost of said entire assembly, kit or system.

If any of the foregoing payments are not timely made, Schlegel shall have the right to terminate, as set forth in Article XI, the licensed right of Chomerics to manufacture, use and sell Licensed Products.

## ARTICLE VI. RECORDS AND ACCOUNTING

Chomerics shall keep full and true books of account and other records in sufficient detail so that the royalties payable to Schlegel hereunder can be properly ascertained. At the request of Schlegel, Chomerics shall permit an independent Certified Public Accountant acceptable to both parties to inspect said books and records a maximum of one (1) time per year during reasonable business hours and upon reasonable written notice; however, that in order to protect Chomerics' confidential business information, the report of such accountant to Schlegel shall be confined to statements regarding the accuracy of royalty payments made by Chomerics. The parties agree that the acceptance of said accountant shall not be unreasonably withheld.

## ARTICLE VII. INFRINGEMENT OF THIRD PARTY PATENTS

(a) In the event any officer of Chomerics receives or otherwise becomes aware of a written charge that Chomerics or a Chomerics' customer is infringing any third party patent by reason of the manufacture, use or sale of a Licensed Product, Chomerics shall give notice to Schlegel of such charge of infringement within thirty (30) days of its receipt.

(b) In the event of the institution of any suit against Chomerics or its customers alleging that the manufacture, use or sale of a Licensed Product infringes any patent rights of

including, if reasonably necessary, the initiation of a lawsuit or other action against such unlicensed third party to terminate such infringement. Any such action shall be in the sole discretion and at the sole expense of Schlegel, and Schlegel shall be entitled to all monetary recoveries therefrom.

### ARTICLE IX.  INDEMNITY FOR DEFECTIVE LICENSED PRODUCTS

Chomerics shall hold Schlegel harmless from and against any loss, expense or damage occasioned by any claim, demand, suit or recovery against Schlegel arising out of the defective nature or performance of a Licensed Product or improper use of a Licensed Product by an end user.

### ARTICLE X.  MAINTENANCE OF PATENT

Schlegel shall take all action and incur all expenses as are necessary and appropriate to maintain the Licensed Patent in good standing, wherever filed. Should Chomerics, on behalf of Schlegel, incur any costs or expenses in that regard, Schlegel agrees to reimburse Chomerics in full for those costs and expenses.

### ARTICLE XI.  TERM AND TERMINATION

(a) This Agreement shall be effective as of the date set forth above, and shall remain in effect during the life of each Licensed Patent. Upon expiration or invalidation of a Licensed Patent, Chomerics shall be free to make, use and sell the Licensed Product in the United States AND CANADA, free from any royalty or any other obligation whatsoever to Schlegel.

(b) If and whenever any party shall default in the performance of any of the provisions of this Agreement, and the default shall continue unremedied for a period of sixty (60) days

- 7 -

after receipt of written notice by the party in default, then, upon the expiration of said sixty (60) day period, the party giving said notice may, at its option, terminate this Agreement by written notice of termination to the defaulting party.

(c) Chomerics may terminate this Agreement without cause upon sixty (60) days' prior written notice to Schlegel.

(d) Any termination of this Agreement shall not discharge either party from any liability occurring prior to the effective date of such termination.

### ARTICLE XII.   GENERAL PROVISIONS

(a) All notices to be sent hereunder shall be in writing and shall for all purposes be deemed to be fully given and received when forwarded by prepaid first-class mail to the respective parties at the following address:

If to Schlegel:

    Schlegel Corporation
    Attention:  President
    1555 Jefferson Road
    P.O. Box 23197
    Rochester, New York   14692-3197

If to Chomerics:

    Chomerics, Inc.
    Attention:  President
    77 Dragon Court
    Woburn, Massachusetts   01888-4014

Either party may change its address by written notice duly given to the other party.

(b) This Agreement shall be interpreted and construed and any legal relations created herein shall be determined in accordance with the laws of the State of New York.

(c) Neither this Agreement nor any of the rights and powers created herein may be assigned, in whole or in part, by either party hereto without the prior written consent of the other party. Exceptions to this provision shall be the assignment of money due or to become due by either party, and the assignment by Chomerics at any time of any part of all its rights and obligations under this Agreement to any subsidiary, associated or controlled company, or to any successor to its entire business and assets to which this Agreement relates.

(d) This Agreement embodies the entire understanding between the parties, and there are no prior representations, warranties or agreements between the parties relating thereto, and this Agreement is executed and delivered upon the basis of this understanding. No alteration, waiver or change in any of the terms hereof subsequent to the execution hereof claimed to have been by any representative of either party shall have any force or effect unless in writing signed by the parties hereto or duly authorized agents or representatives of the parties.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the day and year first written above.

SCHLEGEL CORPORATION

By: _____

Title: _Secretary_____

CHOMERICS, INC.

By: _____

Title: _VP & General Manager__