# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION, :<br>and PARKER INTANGIBLES, LLC, :<br>  :<br>Plaintiff, :<br>  :<br>v. :<br>  :<br>SCHLEGEL ELECTRONIC :<br>MATERIALS, INC., :<br>  :<br>Defendant. :<br>———————————————————— :<br>  :<br>SCHLEGEL ELECTRONIC :<br>MATERIALS, INC., :<br>  :<br>Counterclaimant, :<br>  :<br>v. :<br>  :<br>PARKER-HANNIFIN CORPORATION, :<br>  :<br>Counter-Defendant. :<br>———————————————————— : | Civil Action No 1:07-cv-266-MPT |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## ITS MOTION TO ENFORCE A SETTLEMENT AGREEMENT

Dated: May 28, 2008

WOMBLE CARLYLE SANDRIDGE
 & RICE, PLLC

George Pazuniak (#478)
James M. Lennon (# 4570)
Anna Martina Tyreus (# 4771)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801

*Attorneys for Schlegel Electronic Materials Inc.*

## <u>TABLE OF CONTENTS</u>

I.    NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

II.   SUMMARY OF THE ARGUMENT .............................................................................. 2

III.  STATEMENT OF THE FACTS ..................................................................................... 2

    A.    The Agreement to Settle ......................................................................................... 2

    B.    Negotiations Leading to Settlement........................................................................ 2

    C.    The Essential Terms ............................................................................................... 3

    D.    Parker Reneges On Its Agreement......................................................................... 5

IV.   ARGUMENT................................................................................................................. 7

    A.    Legal Standard ....................................................................................................... 7

    B.    Analysis .................................................................................................................. 8

## **TABLE OF AUTHORITIES**

**Cases**

*Asten, Inc. v. Wangner Systems Corp.*,
   1999 WL 803965 (Del. Ch. Sept.23, 1999) ..................................................... 8, 9

*Hazen v. Miller*,
   1991 Del. Ch. LEXIS 191, *16 (Del. Ch. Nov. 18, 1991).................................... 9

*Hendry v. Hendry*,
   1998 WL 294009 (Del. Ch. 1998) ...................................................................... 8

*Leeds v. First Allied Conn. Corp.*,
   521 A.2d 1095 (Del. Ch. 1986) ......................................................................... 8

*Leonard v. University of Delaware*,
   204 F. Supp. 2d 784 (D. Del. 2002)................................................................... 8

*Loppert v. WindsorTech, Inc.*,
   865 A.2d 1282 (Del. Ch. 2004) .................................................................. 7, 8, 10

*Pennwalt Corp v. Plough, Inc.*,
   676 F.2d 77 (3d  Cir. 1982) ............................................................................... 7

*Pharmathene, Inc. v. SIGA Tech*,
   2008 Del. Ch. LEXIS 9 (Del. Ch. 2008)............................................................ 9

*Roberts Enters., LP v. Fun Sport, Inc.*,
   2008 U.S. Dist. LEXIS 18522 (D. Del. Mar. 7, 2008) .................................... 8, 9

*Tiernan v. Devoe*,
   923 F.2d 1024 (3d  Cir. 1991) ........................................................................... 8

*Wilcher v. City of Wilmington*,
   139 F.3d 366 (3d  Cir. 1998) ............................................................................. 7


**Other Authorities**

*Random House Unabridged Dictionary*, © Random House, Inc. 2006 ................................. 10

Restatement (Second) of Contracts § 33(2) (1981) ................................................................. 8

Defendant and Counterclaimant, Schlegel Electronic Materials Inc. ("Schlegel"), submits this brief in support of its Motion To Enforce A Settlement Agreement reached by the parties on April 14, 2008 ("Motion").[1] Schlegel requires the Court's assistance to enforce this agreement against Plaintiffs and Counterclaim-Defendants Parker-Hannifin Corporation and Parker Intangibles, LLC (collectively "Parker"), because Parker refuses to honor the agreement and now seeks a different outcome. In addition to specific performance of the parties' settlement, Schlegel requests a stay of all other scheduled activity in this case pending the outcome of the Motion. While the Court ordered coordination of this case with Parker's companion actions against Seiren Co. Ltd. (C.A. No. 1:07-cv-104) and Zippertubing (Japan) Ltd (C.A. No. 1:06-cv-751), such coordination no longer appears necessary because Parker has unilaterally covenanted to drop its patents from this case. Therefore, the only remaining claims are Schlegel's counterclaims for inequitable conduct and Schlegel's own patent claims, neither of which are included in the other two litigations. In the alternative to a stay, Schlegel requests expedited consideration of the Motion.

## I.  NATURE AND STAGE OF THE PROCEEDING

Parker sued Schlegel for allegedly infringing five U.S. patents held by Parker.[2] Schlegel counterclaimed against Parker for infringement of two U.S. patents held by Schlegel.[3] In addition, Schlegel defended that Parker's five patents were not infringed, invalid and, significantly, unenforceable in light of Parker's inequitable conduct in the U.S. Patent & Trademark Office ("PTO").

---

[1] D.I. 37
[2] D.I. 13.
[3] D.I. 29-2.

1

## II.  SUMMARY OF THE ARGUMENT

The parties agreed to settle the litigation by each granting to the other a "paid-up cross license[] under the patents-in-suit covering **_all_** past, present and <u>future</u>-marketed products" sufficient to "<u>alleviate</u> Schlegel's concern over **_any_** <u>lingering</u> <u>uncertainty</u> about <u>future</u> disputes,"[4] with each party to bear their own litigation expenses.  Thus, the parties agreed to unrestricted cross licenses for all past, present and future-marketed products.  As this and the other essential terms to settlement were resolved by exchange of clear and unambiguous letters and emails, a valid and enforceable license and settlement agreement exists and should be enforced by this Court.

## III.  STATEMENT OF THE FACTS

### A.  The Agreement to Settle

Schlegel and Parker reached agreement on the settlement of all claims in this action on April 14, 2008.  Parker's counsel documented the agreement by email to Schlegel's counsel on that day, stating:

> This is to confirm our telephone discussion today.  The parties have in principle reached an agreement on settlement in accordance with my letter of April 10.  We will suspend the e-discovery production (due today) in favor of finalizing the details of the agreement.  Parker will provide to you a draft agreement shortly.[5]

### B.  Negotiations Leading to Settlement

Following a third-party deposition by Schlegel regarding technology predating Parker's patents by a decade, Parker's counsel called Schlegel's counsel proposing a settlement solution. Schlegel outlined these details in a "heads of agreement" letter sent to Parker on March 28,

---

[4] See *infra* Section III C and Exhibit E.
[5] Exhibit A.

2

2008[6], which proposed, *inter alia*, "the <u>exchange of non-exclusive patent licenses</u> between Parker and [Schlegel] for all cross-patents asserted in the litigation."[7]

Parker responded by letter on April 1, 2008,[8] counter-proposing: "mutually release … for all past and presently-marketed products [and] … <u>future products that are the same or substantially the same as presently-marketed products</u>. In this respect, the parties could instead grant to each other covenants not to sue if Schlegel would prefer. ..."[9]

At this point Schlegel was unwilling to drop its demand for $350,000 cash payment in light of its counterclaims, but more importantly, was not content with the prospect of a new suit by Parker on any future Schlegel products alleged not to be "the same or substantially the same as presently-marketed products."  Given this position, Schlegel responded by an April 3, 2008 letter[10] explaining:

> Your point that we should simply exchange mutual covenants not to sue under the patents in suit is acceptable, provided that it is a <u>permanent release</u> under the patents. We do not want to have to deal with the patents every time we <u>improve or change</u> one of our products. We would rather invalidate the Parker patents at this juncture and avoid the patent issue in the future. [11]

## C.  The Essential Terms

Parker responded with its April 10, 2008 letter[12], in which the essential terms of the agreement are established.  In this letter, Parker refused to pay any cash to Schlegel but instead offered, *inter alia*, this concession:

> In order to address your client's concern regarding the uncertainty of future litigation, Parker proposes the following. … the parties

---

[6] Exhibit B.
[7] Exhibit B (*emphasis added*).
[8] Exhibit C.
[9] Exhibit C (*emphasis added*).
[10] Exhibit D.
[11] Exhibit D (*emphasis added*).
[12] Exhibit E.

> grant to one another paid-up cross licenses under the patents-in-suit covering **_all_** past, present and <u>future</u>-marketed products. This compromise should <u>alleviate</u> Schlegel's concern over **_any_** <u>lingering uncertainty</u> about <u>future</u> disputes. …[13]

Notably, an unrestricted future license was the only thing of true value offered by Parker, because in this same April 10th letter , Parker threatened "that if Schlegel rejects the current offer and refuses to drop its demands for monetary compensation," Parker might "unilaterally grant Schlegel a covenant not to sue under [Parker's] patents-in-suit, limited only to past and presently-marketed products, which will eliminate the Parker patents from suit, including [Schlegel's] counterclaim regarding it."[14]  Schlegel orally accepted this offer and this acceptance was confirmed by Parker's April 14th email proclaiming that "[t]he parties have in principle reached an agreement on settlement in accordance with my letter of April 10."[15]  On May 23, 2008, after reneging on the settlement agreement, Parker did, in fact, serve Schlegel with a broad covenant not to sue that removes all of Parker's claims against Schlegel for any products "made, used, sold, offered for sale or imported in or into the United States by or for Schlegel," as of May 23, 2008.[16]

Nor can Parker show that an essential term remained unresolved once the future scope of the license was established on April 14th, based on the terms of the April 10th letter.    In the weeks following the agreement on April 14th, Parker and Schlegel exchanged a series of draft settlement documents to address the remaining non-essential terms of the agreement.  Parker sent a first "proposed license and settlement agreement" on April 22, 2008 (April 22nd Document)[17]

---

[13] Exhibit E (*emphasis added*).
[14] Exhibit E.
[15] See *supra* Section III A and Exhibit A.
[16] Exhibit M
[17] Exhibit F.

4

and, on April 28, 2008, a second proposal ("April 28th Document")[18] in response to Schlegel's April 25, 2008 counter-proposal.  Parker's April 28th Document is the latest proposed license and settlement document exchanged by the parties.  It demonstrates that there were no essential terms in dispute after April 14th.  The only true issue in dispute now is whether Parker is obliged to give Schlegel a license covering "***all*** .. future-marketed products" sufficient to remove "***any*** lingering uncertainty about future disputes," *i.e.*, to give Schlegel an unrestricted future license.

### D.  Parker Reneges On Its Agreement

Parker's April 22nd and 28th documents illustrate an attempt to pull back the broad license agreed to on April 14th by narrowing the definition of "Licensed Schlegel Products".[19]  A patent license from Parker limited to Parker's proposed definition in these two documents fails  to cover even all of Schlegel's past and presently-marketed products.[20]

More importantly, a license limited according to Parker's proposed definition would not clear Schlegel for future product developments, and so would not "alleviate [Schlegel]'s concern over any lingering uncertainty about future disputes."

In response to Parker's April 22nd Document, Schlegel immediately notified Parker by email that this proposed license was not consistent with the terms of the parties' agreement:

> In your letter of April 10th you proposed (and we consented to)
> "grant[ing] to one another paid-up cross-licenses under the patents-
> in-suit covering all past, present and future marketed products."

---

[18] Exhibit G.

[19] Both documents define "Licensed Schlegel Products" as "E  XX  5,6  X X XXXX Series EMI Shielding Gaskets." This is based on the numbering scheme in Schlegel's "Part Number" for its EMI fabric over foam shielding gaskets (see p. 2 of Exhibit H, attached hereto and available online  at  http://www.schlegelemi.com/pdf/ProfileSelectionGuide.pdf).  The numbers "5,6" in Parker's draft documents indicate an attempt to narrow the license to only certain EMI shielding gaskets currently marketed in the Profile Selection Guide, *i.e.*, those recognized as UL 94 V-0 foam, which refers to an Underwriters Laboratory rating for flammability.

[20] For example, Figure 1 identifies a third presently available foam type, Type 1,  recognized as UL 94 HB, a less stringent flammability rating of Underwriters Laboratory.

> The language of your draft license and settlement does not appear
> to reflect this point. Am I missing something? Did you intend to
> cover this point with the mutual release? If so, the language of the
> mutual release needs to extended [*sic*] beyond claims that could
> have been brought up to the Effective Date of the agreement. ...[21]

Parker responded to this issues by email on April 23, 2008 and again reiterated the parties

intention for the license grant to broadly cover future products:

> Thanks for your email. When we spoke prior to my April 10 letter
> I came away with the understanding that Schlegel's chief concern
> related to being sued again if it made modifications to its products.
> We drafted the proposed agreement to cover such products and
> alleviate that concern. …[22]

In light of this response, Schlegel amended Parker's April 22nd Document by redefining

"Schlegel Licensed Products" broadly to include "Fabric-Over-Foam EMI Shielding Gaskets"

(April 23rd Document).[23] This simplified definition would be sufficient to clear all past, present

and future-marketed products made, used or sold by Schlegel that could be relevant to Parker's

patents. In addition, Schlegel amended the release clause to clarify that each party released the

other from claims for all past, present and future marketed products, in case Parker preferred to

deal with removal of future patent liability by way of a release rather than through a license.

Schlegel also amended other non-essential terms in Parker's April 22nd Document.

Thereafter, Parker responded with its April 28th Document, which accepted all of

Schlegel's changes to the non-essential terms, but changed the definition of "Schlegel Licensed

Products" back to its narrowly proposed "E XX 5,6 X X XXXX Series Fabric-Over-Foam EMI

Shielding Gaskets."[24]

---

[21] Exhibit I.

[22] Exhibit J.

[23] Exhibit K.

[24] Parker also returned the release language back to the narrow scope of its April 22nd Document,
only for products "licensed herein."

6

After April 28th, counsel for the parties exchanged a series of telephone calls that ultimately lead Schlegel to conclude that Parker would not honor its agreement to license Schlegel for all past, present and future-marketed products sufficient to alleviate any lingering uncertainty about future disputes. Parker's counsel confirmed this by email on May 8, 2008. [25]

The delay due to settlement discussions caused this case to fall off pace with Parker's companion actions against Seiren Co. Ltd. (C.A. No. 1:07-cv-104) and Zippertubing (Japan) Ltd (C.A. No. 1:06-cv-751). However, coordination of these actions no longer appears necessary. Parker has recently served on Schlegel a covenant not to sue[26] that removes all of Parker's affirmative patent claims from this case, leaving only Schlegel's inequitable conduct counterclaim against the Parker patents and Schlegel's counterclaims for its own patents. Given that coordination with the other cases no longer appears necessary and because this case should no longer exist, Schlegel requests a stay of all other activities in this case. In the alternative to a stay, Schlegel requests expedited consideration of this Motion.

## IV. ARGUMENT

### A. Legal Standard

Settlement agreements are contracts subject to the local laws of contract interpretation.[27] Under Delaware law, "[a] settlement agreement is enforceable as a contract," the formation of which is determined by the parties' "overt manifestation of assent - not subjective intent...."[28] The Delaware Court of Chancery has framed the inquiry as follows:

> [W]hether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting,

---

[25] Exhibit L.

[26] Exhibit M.

[27] *Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998) (*citing Pennwalt Corp v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982)).

[28] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004) (citation omitted).

> that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations ...”[29]

A settlement agreement containing all essential terms is enforceable even if it expressly leaves other matters for future negotiation.[30] Parties in agreement on such essential terms are not required to draft and sign a formal written agreement to be bound.[31]

District courts have jurisdiction to enforce settlement agreements in cases pending before them,[32] and motions to enforce such agreements are reviewed under the same standard as for summary judgments.[33]

“Delaware law favors the voluntary settlement of contested disputes. … This public policy counsels in favor of granting specific performance.”[34]

## B. Analysis

At issue in this case is a question similar to that presented in the case of *Roberts Enters., LP v. Fun Sport, Inc.*,[35] where this Court recently denied a motion to enforce an alleged settlement agreement. In *Roberts*, plaintiff sought to enforce a license and settlement agreement where defendant argued there was no meeting of the minds on an essential term of the agreement. The key difference between *Roberts* and the case at bar is that, in *Roberts*, the Court found “that the parties were not in agreement on [an essential] contract term.” The Court

---

[29] *Id.* (*quoting Leeds v. First Allied Conn. Corp.*, 521 A.2d 1095, 1097 (Del. Ch. 1986)).

[30] *Loppert,* at 1289 (*citing Asten, Inc. v. Wangner Systems Corp.,* 1999 WL 803965, at **2-3 (Del. Ch. Sept.23, 1999); Restatement (Second) of Contracts § 33(2) & cmt. a (1981). "This Court has enforced settlement agreements for division of land where the dividing line was not specified." *citing Hendry v. Hendry*, 1998 WL 294009, at **2-3 (Del. Ch. 1998)).

[31] *Loppert,* at 1287 (*citation omitted*).

[32] *Leonard v. University of Delaware*, 204 F. Supp. 2d 784, 786 (D. Del. 2002).

[33] *Id.* (*citing Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991)).

[34] *Loppert,* at 1290, n.53 (*citation omitted*).

[35] 2008 U.S. Dist. LEXIS 18522, *4 (D. Del. Mar. 7, 2008) (attached hereto as Exhibit M).

concluded that "each party likely proceeded with settlement negotiations under its own interpretation" regarding the intended scope of the license.[36]

By comparison, an agreement on essential terms was found, in *Asten, Inc. v. Wangner Systems Corp.*, where the Delaware Court of Chancery enforced a patent license and settlement agreement despite plaintiff's assertion that material terms essential to the formation of a contract were omitted from the parties agreement.[37]   In fact, Delaware law routinely recognizes contracts are created and enforceable even in the absence of a formal written and signed document.[38]

An objective review of the communications in the present case leaves no doubt that Parker and Schlegel unambiguously assented to the essential term of "cross licenses under the patents-in-suit covering **_all_** past, present and future-marketed products."   And if there were any doubt as to whether implied restrictions on the scope of future-marketed products could be read into this proposal, Parker removed it by further explaining that such a compromise should "alleviate Schlegel's concern over any lingering uncertainty about future disputes."[39]   There is simply no way to read the proposed license terms of the April 10th letter as anything short of a fully unrestricted cross license.

---

[36] *Roberts*, at *7.  The Court found significant differences between Roberts Enterprises' proposed territory provision ("[Roberts Enterprises] cannot grant you a license on an exclusive basis") of the license agreement and Fun Sports' proposed provision ("it is necessary for [Fun Sport] to have some area of protection from other licensees of Roberts [Enterprises]"), which demonstrated that negotiations over territory had not been resolved.  *Id*. at *7-8.

[37] 1999 WL 803965 (Del. Ch. Sept.23, 1999).  *Asten* is comparable on its facts but construes those facts in light of South Carolina law on contract interpretation. *Id*.

[38] *See e.g., Loppert*, at 1290; *Pharmathene, Inc. v. SIGA Tech*, 2008 Del. Ch. LEXIS 9, *28 (Del. Ch. 2008) (refusing to dismiss a claim asserting the existence of a license agreement even though a written agreement was never executed); *Hazen v. Miller*, 1991 Del. Ch. LEXIS 191, *16 (Del. Ch. Nov. 18, 1991) (recognizing and ordering specific performance of an oral contract to sell interest in a corporation).

[39] Exhibit E.

9

In any event, Parker's counsel[40] now argues that there was no "meeting of the minds"[41] when he stated in his April 14th email that "[t]he parties have in *principle*[42] reached an agreement on settlement in accordance with my letter of April 10." He argues that his proposal for "the parties [to] grant to one another paid-up cross licenses under the patents-in-suit covering all past, present and future-marketed products," was intended to mean that Parker would grant to Schlegel "a license on future-marketed products under [unspecified] reasonable terms and conditions," and that "a fully unrestricted license will not be acceptable."[43]

But Parker's *post hac* reconstruction ignores its clear intention to "alleviate [Schlegel]'s concern over any lingering uncertainty about future disputes." It is impossible to reconcile the unambiguous language of Parker's offer to license ***all*** future-marketed products that was designed to remove "***any*** lingering uncertainty about future disputes"[44] with Parker's convenient re-characterization of the offer as a future license intended to be restricted and conditioned but that is silent as to even the suggestion of a restriction or condition.

Parker's reconstruction also ignores the significant compromise that lead to its April 10th proposal to license "***all*** ... future-marketed products."[45] Prior to this communication, Parker sought to limit the future component of its license to "future products that are ... substantially the same as presently-marketed products."[46] This proposal was wholly rejected by Schlegel because it meant Schlegel would have to "deal with the patents every time we improve or change one of

---

[40] An attorney of record in a pending action that acknowledges a compromise has been reached is presumed to have the lawful authority to do so, and this principle does not change merely because his client is a corporation. *Loppert.,* 865 A.2d 1282, 1288 (*citation omitted*).
[41] Exhibit L.
[42] "Principle" is defined as "in essence or substance; fundamentally: *to accept a plan in principle*." *Random House Unabridged Dictionary*, © Random House, Inc. 2006.
[43] Exhibit L.
[44] See *supra* Section III C and Exhibit E.
[45] Exhibit E.
[46] Exhibit C.

our products."[47]  Through its April 10th letter, Parker relented in its effort to restrict the future component of the license but stood firm on its refusal to pay the $350,000 demanded by Schlegel.

Given that Parker's April 1st letter had already offered a license to future products substantially similar to presently marketed products (*i.e.*, allowing limited modifications) and that Parker threatened to and did serve a covenant not to sue that excuses all of Schlegel's past and presently marketed products, the only true value offered in exchange for Schlegel to drop its demand for $350,000 was an unrestricted license to future-marketed products that would remove the prospect of any future litigation on the Parker patents.  This is what Schlegel accepted on April 14th.

Parker's desire to overreach against a smaller adversary and strike a better deal after the settlement and license agreement was reached undermines the spirit of compromise and defies the central cannons of contract law.  Unfortunately this act reflects a pattern of bad-faith stemming back to the inequitable procurement of the patents, and continuing through Parker's feigned prosecution of this case.  And now, after requiring Schlegel to incur hundreds of thousands of dollars in document review and discovery to demonstrate what Parker should have already known about its patents, Parker simply issues a time-limited covenant not to sue. The Court should not tolerate such gamesmanship.

The April 10th and 14th communications document a valid and enforceable agreement on all essential terms to the parties licenses and settlement.  The fact that Parker contested no other terms beyond the scope of licenses and release in its April 28th Document further evidences the lack of any remaining essential terms beyond those of the April 10th letter.  Accordingly, the

---

[47] Exhibit D.

11

Court should enforce the terms of the license and settlement agreement recorded in Parker's April 10th letter.

**CONCLUSION**

In light of the foregoing analysis of facts and law, Schlegel respectfully requests that the Court grant its Motion to (1) enforce the parties' April 14, 2008 license and settlement agreement; and (2) stay all other activities in this litigation pending the outcome of this Motion, or, in the alternative, expedite consideration of this Motion.


Dated:  May 28, 2008                    **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
                                        *A Professional Limited Liability Company*

                                        */s/  James M Lennon*
                                        George Pazuniak (#478)
                                        James M. Lennon (# 4570)
                                        Anna Martina Tyreus (# 4771)
                                        222 Delaware Avenue, Suite 1501
                                        Wilmington, DE 19801
                                        Tel:  (302) 252-4328
                                        Fax:  (302) 661-7704
                                        gpazuniak@wcsr.com
                                        jlennon@wcsr.com
                                        mtyreus@wcsr.com

                                        *Attorneys for Schlegel Electronic Materials, Inc.*

12

# EXHIBIT A

**Lennon, Jim**

---

**From:**   Steve Nash [SNash@cblh.com]

**Sent:**   Monday, April 14, 2008 6:03 PM

**To:**   Lennon, Jim

**Subject:** PH v. Schlegel

Jim,

This is to confirm our telephone discussion today. The parties have in principle reached an agreement on settlement in accordance with my letter of April 10. We will suspend the e-discovery production (due today) in favor of finalizing the details of the agreement. Parker will provide to you a draft agreement shortly.

Steve

Steven A. Nash
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
PO Box 2207
Wilmington, DE 19899

Tel: 302.888.6306
Fax: 302.658.5614
email: snash@cblh.com

Admitted in Pennsylvania

**This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.**

5/21/2008

# EXHIBIT B



WOMBLE
CARLYLE
SANDRIDGE
& RICE

A PROFESSIONAL LIMITED
LIABILITY COMPANY

222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

www.wcsr.com

James M. Lennon
Attorney
Direct Dial: (302) 252-4326
Direct Fax: (302) 661-7726
E-mail: JLennon@wcsr.com

March 28, 2008

**VIA E-MAIL snash@cblh.com**

Steven A. Nash
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899

   Re:  *Parker-Hannifin (Parker) v. Schlegel Electronic Materials (SEM)*

Dear Steve,

   Thank you for you call on Tuesday. While our client remains upset about the litigation expense forced upon them since our prior meeting -- particularly for the paper and electronic document collection and production, which, to date, has not been reciprocal[1] --the parties appear to be in general agreement on the proposal. Since the proposal did not include details, for completeness sake, we propose the following "heads":

  1.  The exchange of non-exclusive patent licenses between Parker and SEM for all cross-patents asserted in the litigation;

  2.  SEM will pay Parker a 7% annual patent license royalty on SEM's point-bonded nylon (internally designated "PBN2") fabric-over-foam EMI gaskets, including identical gaskets which might use a different name or designation in the future, until the expiration of the last to expire of the asserted Parker patents;

---

[1] Parker (which is a huge company) produced little more than 5,000 pages of documents from paper sources dating back over 10 years while SEM (a much smaller company) produced nearly 60,000 pages for the same period. Parker says that it is reviewing only 4 gigabytes of raw data for its electronic production. By contrast Schlegel reviewed 54.3 gigabytes from a collection that originally contained 80 gigabytes of data. There is something plainly amiss here -- given the relatively small number of documents produced by Parker in absolute terms and in comparison to a much smaller competitor -- that was going to be (and absent settlement will be) the subject of 30(b)(6) depositions and motions to compel. We do not believe that Parker has conducted proper electronic discovery and has not made a proper search of its paper sources, but, of course, this remains to be explored in future discovery absent settlement. Nonetheless, SEM is willing to set these concerns aside to achieve the results outlined above.



Steven A. Nash
March 28, 2008
Page 2

3.    SEM grants Parker a fully paid-up patent license for a lump sum in the amount of $350,000;

4.    Other than the payments identified above, each party will be licensed to make, use or sell products covered by the asserted patents without further royalty obligations;

5.    Neither party will support any challenge to validity or enforceability of the licensed patents; and

6.    The agreement will include a standard release, and stipulation to dismiss with prejudice.

Please feel free to call me to discuss.

Sincerely,

James M. Lennon

JL/la

cc:    Frank DiGiovanni (via email fdigiovanni@cblh.com)

EXHIBIT C

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

**WILMINGTON, DE**

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Steven A. Nash
TEL (302) 888-6306
FAX (302) 656-9072
EMAIL snash@cblhlaw.com

Admitted in Pennsylvania

**COMMUNICATION UNDER
RULE 408**

April 1, 2008

### VIA E-MAIL AND U.S. MAIL

James M. Lennon
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801

> Re:     *Parker-Hannifin Corporation v. Schlegel Electronic Materials, Inc.*,
> C.A. No. 1:07-cv-00266-MPT

Dear Jim:

I am writing in response to your letter of March 28, 2008, in which you outlined Schlegel's proposed terms of settlement. We feel optimistic that the parties are close to an agreement. However, there is no need for Parker to take a license under the Schlegel patents, as no Parker products fall within their scope.

Because the proposed licensing terms unnecessarily complicate the arrangement, we instead propose the following:

- The parties mutually release one another from liability for all past and presently-marketed products within the subject matter of the current litigation.

- The parties mutually release one another from liability for future products that are the same or substantially the same as presently-marketed products. In this respect, the parties could instead grant to each other covenants not to sue if Schlegel would prefer.

- Neither party will support any challenge to validity or enforceability of the patents-in-suit, except to the extent that the other party asserts one or more of the patents-in-suit against a future product not the same or substantially the same as a product now marketed.

James M. Lennon
April 1, 2008
Page 2 of 2

- The agreement will include a stipulation of dismissal with prejudice for all claims and counterclaims in the litigation, each party to pay its own costs and attorneys fees.

We look forward to hearing from you with respect to the above proposal.

Also, I would like to clear up some confusion evident in the footnote of your letter. In the course of e-discovery, Parker has collected and preserved 278.9 GB of data. Of the data collected, Parker has processed and searched 27.4 GB of data from the sources most likely to include discoverable information. I hope this clears up any confusion, and sets your mind at ease with respect to Parker's good faith efforts to preserve and produce relevant documents. If you wish to discuss this further, please do not hesitate to contact me.

Sincerely,

Steven A. Nash

SAN/el

cc:    George Pazuniak (via electronic mail)
       Anna Martina Linnea Tyreus (via electronic mail)

EXHIBIT D



**WOMBLE
CARLYLE
SANDRIDGE
& RICE**

A PROFESSIONAL LIMITED
LIABILITY COMPANY

222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

www.wcsr.com

James M. Lennon
Attorney
Direct Dial: (302) 252-4326
Direct Fax: (302) 661-7726
E-mail: JLennon@wcsr.com

April 4, 2008

**VIA E-MAIL snash@cblh.com**

Steven A. Nash
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899

Re:     *Parker-Hannifin (Parker) v. Schlegel Electronic Materials (SEM)*

Dear Steve,

Thank you for your letter of April 1, 2008.

Parker disclaims any need to take a license under the Schlegel patents but then asks for a release from any liability. This is not only self-contradictory, but also utterly unfounded, because, so far, Parker's only non-infringement defense to its CHO-SEAL products has been an untenable claim construction. Parker has not presented any validity defense at all, and certainly nothing that is on the same scale as the formidable §102 anticipation and inequitable conduct defenses Schlegel has mounted to Parker's patents. Schlegel will not surrender its well-supported infringement contentions against Parker without adequate compensation.

This is not to say that we do not wish to resolve the case. However, as to Parker's case, further proceedings risk the finding of inequitable conduct and bad-faith maintenance of unsupported infringement contentions, which may result in Parker paying not only its own litigation expenses but Schlegel's as well. At a minimum, some of Parker's patent claims will be held invalid, which will harm Parker's royalty stream from at least one existing licensee.

By contrast, Schlegel has no risk in this litigation, other than the costs of its own litigation (which it may recover from Parker), and has a sufficiently justified chance of recovery under its patents to continue. And, even if both parties succeed on their infringement claims, Parker, as the larger company has more damage exposure than Schlegel.



WOMBLE
CARLYLE
SANDRIDGE
& RICE
PLLC

Steven A. Nash
April 4, 2008
Page 2

Your point that we should simply exchange mutual covenants not to sue under the patents in suit is acceptable, provided that it is a permanent release under the patents. We do not want to have to deal with the patents every time we improve or change one of our products. We would rather invalidate the Parker patents at this juncture and avoid the patent issue in the future. Mutual covenants not to sue will offset, to some extent, the parties' patent rights. However, as we noted above, including the relative strengths of the parties' respective patents and the disparity in revenues/potential damages of the parties, Schlegel will need additional consideration to provide a covenant not to sue, such as that previously proposed, and Parker has not offered anything in response to that.

We do need to move on this issue, because both parties will shortly be producing additional documents. We, thereafter, will be filing a Rule 30(b)(6) notice of deposition of Parker, particularly directed to its searches and production of hard-copy and electronic discovery, followed by motions to compel. While we recognize your comments, we can not accept that a much smaller company such as Schlegel has many more times the number of responsive documents than Parker. This is something that we believe both parties would rather not do, but we have no choice but to move on this immediately absent settlement.

Sincerely,

James M. Lennon

JL/la

cc:     Frank DiGiovanni (via email fdigiovanni@cblh.com)

# EXHIBIT E

# CONNOLLY BOVE LODGE & HUTZ LLP

### ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Steven A. Nash
TEL (302) 888-6306
FAX (302) 656-9072
EMAIL snash@cblhlaw.com

Admitted in Pennsylvania

## COMMUNICATION UNDER
## RULE 408

April 10, 2008

## VIA E-MAIL AND U.S. MAIL

James M. Lennon
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801

      Re:    *Parker-Hannifin Corporation v. Schlegel Electronic Materials, Inc.,*
             C.A. No. 1:07-cv-00266-MPT

Dear Jim:

Thank you for your letter of April 3, 2008, responding to our last proposal.

In order to address your client's concern regarding the uncertainty of future litigation, Parker proposes the following. The parties exchange mutual releases from liability in connection with the subject matter of the lawsuit, and dismiss all claims and counterclaims with prejudice. In addition, the parties grant to one another paid-up cross-licenses under the patents-in-suit covering all past, present and future-marketed products. This compromise should alleviate Schlegel's concern over any lingering uncertainty about future disputes.

With regard to your client's insistence on receiving monetary compensation from Parker, that is unacceptable. There is no basis whatsoever for such compensation. Parker is prepared to continue with the litigation in lieu of submitting to Schlegel's unreasonable demand.

Please understand that if Schlegel rejects the current offer and refuses to drop its demands for monetary compensation, Parker reserves the right to unilaterally grant Schlegel a covenant not to sue under its patents-in-suit, limited only to past and presently-marketed products, which will eliminate the Parker patents from suit, including your counterclaim regarding it. If Parker is constrained to pursue that course, and Schlegel continues to press its counterclaims on its patents, please be assured that Parker will vigorously defend.

James M. Lennon
April 10, 2008
Page 2 of 2


      We believe that this matter can be settled fairly and amicably, and we hope that you agree.  We welcome any further questions you or your client may have, and look forward to hearing from you.  Thanking you for your attention to the foregoing, I remain

                    Very truly yours,

                    Steven A. Nash

SAN/el

cc:    George Pazuniak (via electronic mail)
       Anna Martina Linnea Tyreus (via electronic mail)

EXHIBIT F

## LICENSE AND SETTLEMENT AGREEMENT

THIS LICENSE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of the _____ day of March, 2008 ("the Effective Date"), by and between Parker-Hannifin Corporation, a corporation of the State of Ohio, U.S.A. having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, U.S.A. (jointly and severally with its parents, subsidiaries, related companies, affiliates, and ventures under its control or under which it is controlled including its subsidiary, Parker Intangibles, LLC, also having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, "Parker"), and Schlegel Electronic Materials, Inc, a(n) _____ corporation having an address at _____ (jointly and severally with its parents and subsidiaries, and its related companies, affiliates, and ventures under its control or under which it is controlled  "Schlegel").

WHEREAS, Parker is the recorded owner of a family of patents directed to flame retardant electromagnetic interference (EMI) shielding gaskets and a direct wet coating process such as knife-over-roll or slot die for manufacturing flame-retardant shielding fabric for such gaskets;

WHEREAS, Parker presently has filed suit against Schlegel in the U.S. District Court for the District of Delaware (the "Court"), Civil Action No. C.A. No. 1:07-cv-266 (the "Action"), alleging that certain products marketed by Schlegel infringe the claims of one or more of the patents within such family of patents;

WHEREAS, Schlegel has filed a counterclaim against Parker in the Action alleging that certain products marketed by Parker infringe the claims of certain Schlegel patents;

WHEREAS, Parker and Schlegel (jointly, the "parties") have agreed to settle the Action on the terms set forth in this Agreement and the attached Consent Judgment; and

WHEREAS, the parties acknowledge and agree that the Court has jurisdiction over the subject matter of the Action and over each of the parties to this Agreement, and that the Court shall retain jurisdiction for the purposes of implementing and enforcing this Agreement.

NOW, THEREFORE, the parties hereby agree to resolve the present dispute between them as follows:

## ARTICLE I
## DEFINITIONS

As used herein, the following terms when written with initial capital letters shall have the meanings set forth hereinafter unless the context requires otherwise:

1.1     Licensed Parker Patents. The patents listed in Schedule 1 hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.2     Licensed Schlegel Products.  The products of the type identified in Schedule 2 hereto, and any modifications or improvements thereof.

21Apr08

1.3     <u>Licensed Schlegel Patents</u>. The patents listed in <u>Schedule 3</u> hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.4     <u>Licensed Parker Products</u>.  The products of the type identified in <u>Schedule 4</u> hereto, any modifications or improvements thereof.

1.5     <u>Confidential Information</u>.  Any and all technical, commercial, business, financial or other confidential and/or proprietary information, and all media containing any of the foregoing, including copies or duplicates thereof, disclosed either directly or indirectly at any time before or during the Term of this Agreement by Schlegel to Parker ("Schlegel Confidential Information"), or by Parker to Schlegel ("Parker Confidential Information").

**ARTICLE II**
**<u>NON-EXCLUSIVE LICENSES</u>**

2.1     <u>Grant to Schlegel</u>.  Parker grants to Schlegel, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Parker Patents for Schlegel to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Schlegel Products during the Term of this Agreement.

2.2     <u>Grant to Parker</u>.  Schlegel grants to Parker, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Schlegel Patents for Parker to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Parker Products during the Term of this Agreement.

2.3     <u>No-Sublicenses</u>. Each of the non-exclusive licenses herein granted shall be indivisible, non-transferable, and without the right to grant sublicenses, or to subcontract the manufacture of or otherwise have made the Licensed Parker or Schlegel Products as the case may be, without the prior, written consent of the granting party.

2.4     <u>Infringements</u>. Each party shall promptly advise the other party by written notice of all relevant facts pertaining to any known, suspected, or threatened infringement by any third party of the patents licensed to it hereunder.  The party granting the license hereunder shall have the exclusive right, but not the obligation, to bring suit against any such infringement or alleged infringement, it being understood that all matters relating to the enforcement of the patents licensed hereunder by suit or otherwise are to be determined and/or undertaken in the sole and complete discretion of the granting party.  Should the granting party institute suit against any infringement or alleged infringement of the patents licensed hereunder, the other party at the expense of the granting party, shall: (i) cooperate in all respects and, to the extent possible, have its employees testify when requested and make available relevant records, papers, information, samples specimens and the like; and (ii) agree to be named as a nominal party in such suit.

# ARTICLE III
## TERM AND TERMINATION

3.1    <u>Term</u>.  The term of each of the licenses herein granted shall commence as of the Effective Date, and shall continue as to each such license, along with the rights and obligations of each of the parties hereunder, unless earlier terminated in accordance with the terms and conditions hereof, until the expiration of the last to expire patent included in such license (the "Term").

3.2    <u>Termination</u>.

    (a)    Each of the licenses herein granted may be terminated at any time during the Term:

        (i)    By the licensor party of such licensee upon written notice to the licensee party of such license by reason of any material default or breach of this Agreement, provided that the defaulting licensee party shall have received prior written notice of the specific default or breach and shall have failed to cure the default within ninety (90) days after a notice has been sent by the licensor party to the defaulting licensee party; or

        (ii)    By either party with the written consent of the other party.

    (b)    Any termination of this Agreement on account of a material breach of default hereof shall not be an exclusive remedy for such default or breach, but shall be in addition to any legal or equitable relief available to the either party as a result of such default or breach by the other party.

3.3    <u>Continued Liability</u>.  Except as is stated in the mutual release set forth herein neither the termination, expiration, nor non-renewal of this Agreement shall release Schlegel or Parker from any obligations to the other arising under this Agreement that have been incurred prior to any such termination, expiration, or non-renewal.

# ARTICLE IV
## DISCLAIMERS AND LIMITATION OF LIABILITY

    (a)    EACH PARTY IS SOLELY RESPONSIBLE FOR ITS ACTIVITIES CARRIED OUT UNDER THE LICENSE GRANTED HEREUNDER TO IT, AND THE OTHER PARTY MAKES NO REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, RELATING TO THE PATENT LICENSED HEREUNDER, OR THE PRODUCTS LICENSED HEREUNDER, OR TO THE OTHER PARTY'S PRACTICE, MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF. RATHER, EACH PARTY EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF TITLE, NONINFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, AND WHETHER EXPRESS, IMPLIED, OR ARISING BY

OPERATION OF LAW, TRADE USAGE OR COURSE OF DEALING, PERTAINING OR RELATING TO THE PATENTS AND/OR PRODUCTS LICENSED HEREUNDER, OR TO THE PRACTICE, MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF.

(b)     Nothing in this Agreement shall be construed, whether expressly or by implication, estoppel, or otherwise, as: (i) a warranty or representation by either party as to the utility, validity or enforceability of the patents licensed hereunder, and each party understands and agrees that the other party does not warrant the utility, validity or enforceability thereof; or (ii) a requirement that either party file any patent application, or secure or maintain any patent including the patents licensed hereunder; or (iii) a warranty or representation by either party as to other party's freedom from infringement, misappropriation, or other violation, or from any allegations of the same, of any third party patents, trade or service marks, mask works, domain names, tradenames, trade dress, trade secrets, confidential or proprietary information, copyrights, or other intellectual property or proprietary rights, and neither party shall indemnify, defend, or otherwise hold the other party harmless against any such infringement, misappropriation, or other violation, or any such allegations of the same; or (iv) a warranty or representation by either party as to the other party's freedom from third party infringers or alleged infringers of the patents licensed hereunder, and neither party shall be under any obligation to enforce the patents licensed hereunder or any of its patents or other intellectual property or proprietary rights against any such infringers or alleged infringers of the patents licensed hereunder; or (v) conferring upon either party any right to use in advertising, publicity, or the like any name, tradename, or trademark of the other party, and neither party shall use any of the same; or (vi) granting to either party by implication, estoppel, or otherwise any licenses or rights under any patents or patent applications of the other party other than the patents licensed hereunder, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, design, mask work, or other intellectual property or proprietary right or product of the other party, and each party understands and agrees that there is no express, implied, or other license to it under any patent or application for patent of the other party other than the patents licensed hereunder, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, mask work, design, or other intellectual property or proprietary right or product of the other party; or (vii) an obligation by either party to furnish know-how or any other technical, commercial, business, or other information or technology to the other party expect as otherwise expressly stated herein.

(c)     IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO LOST PROFITS ARISING FROM OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR RELATING TO THE LICENSED PATENTS OR LICENSEE'S USE THEREOF, OR TO THE LICENSED PRODUCTS OR LICENSEE'S MANUFACTURE, USE, OFFER FOR SALE, OR SALE THEREOF, WHETHER ALLEGED TO ARISE FROM PERSONAL INJURY, PROPERTY DAMAGE,

SHUTDOWN OR NON-OPERATION OF ANY FACILITY, OR ANY OTHER CAUSE, OR UNDER ANY THEORY OF LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PATENT INFRINGEMENT OR OTHERWISE, AND REGARDLESS OF WHETHER EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

## ARTICLE V
## INDEMNIFICATION

(a) Each party (the "indemnifying party") shall defend and hold the other party (the "indemnified party"), its successors and assigns and their officers, employees and agents harmless from, against, for and in respect of any and all losses, liabilities, demands, damages, costs and expenses, including reasonable attorney's fees, arising out of any claim, allegation, threat, suit, action, or proceeding, and any award or settlement thereof, for bodily injury, death, or property damage, or any other injury or damage of any kind whatsoever, including for product liability, infringement, misappropriation or other violation of any patent or any registration or application therefor, or of any under any trade or service mark, domain name, trade name, trade dress, trade secret, confidential or proprietary information, copyright, or other intellectual property or proprietary right, breach of contract, or warranty, if and to the extent such injury or damage is caused by, relates to, or arises out of: (i) the willful, reckless, or negligent act or omission of the indemnifying party in the performance of its obligations hereunder; (ii) the material breach or default by indemnifying party under the terms of this Agreement; (iii) the indemnifying party's use of the patents licensed hereunder or its practicing thereunder or under the license herein granted; or (iv) the indemnifying party manufacture, use, offer for sale, sale, supply, sourcing, specification, or design of the products licensed hereunder, or its failure to comply with any laws, ordinances, or regulations relating thereto.

(b) The indemnifying party's liability under this Article is contingent upon: (i) the indemnified party notifying the indemnifying party promptly of the claim, allegation, threat, suit, action, or proceeding; (ii) indemnifying party having the exclusive right to control and direct the investigation, preparation, defense and settlement thereof; and (iii) the indemnified party's reasonable cooperation at indemnifying party's expense, provided, however, that the failure by the indemnified party to promptly give the indemnifying party notice shall affect the indemnifying party's obligation to indemnify only to the extent that the rights of the indemnifying party are materially prejudiced by such failure, and further provided that the indemnified party may participate, at its own expense, in such defense and in any settlement discussions directly or through counsel of its choice.

## ARTICLE VI
## MISCELLANEOUS

6.1 Disputes. The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between representatives who have

authority to settle the controversy. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

6.2    <u>Notices</u>.

    (a)    All notices, requests and other communications hereunder shall be in a writing delivered by hand, electronic transmission, or certified mail, postage prepaid, return receipt requested, and shall be deemed to have been duly given at the time of receipt as evidenced by the dated written or electronic return receipt of the receiving party.

    (b)    All correspondence shall be sent or dispatched as follows:

        If to Parker:    Parker Chomerics Division
                              77 Dragon Court
                              Woburn, Massachusetts 01888
                              Attention: Controller

        With a copy to:    Parker-Hannifin Corporation
                                6035 Parkland Boulevard
                                Cleveland, Ohio 44124-4141
                                Attention: Secretary

        If to Schlegel:    Schlegel Electronic Materials, Inc.
                                  _____
                                  _____
                                  _____
                                  Attention: _____

provided, however, if either party shall have designated a different address by written notice given as provided above and received by the other party, then to the last address so designated.

6.3    <u>Independent Contractors</u>.  The relationship between Schlegel and Parker shall at all times be that of independent contracting parties. Neither party shall in any manner represent that it or its employees or agents are employees or agents of the other party, and nothing contained in this Agreement shall be construed as authorizing either party to create or assume any obligation or liability in the name of the other party or subject the other party to any obligation or liability.  This Agreement shall not constitute, create, give effect to or otherwise imply a joint venture, pooling arrangement, partnership or formal business organization of any kind.  Nothing herein shall be construed as providing for the sharing of profit or losses arising out of the efforts of either or both parties.

6.4    <u>Entire Agreement</u>.  This agreement states the entire agreement between Schlegel and Parker with respect to the subject matter herein involved, and supersedes all proposals, communications or agreements, whether oral or written..

6.5    <u>Governing Law</u>. This Agreement shall be construed by and interpreted in accordance with the laws of the United States, without regard to its or any other conflict of law provisions or principles.  All questions concerning the construction or effect of patent applications and patents shall be decided in accordance with the laws of the country in which the particular patent application or patent concerned has been filed or granted, as the case may be. The parties specifically elect to not be bound in any way by the United Nations Convention on Contracts for the International Sale of Goods.

6.6    <u>Waiver</u>.

    (a)    No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless made in writing and signed by the duly authorized corporate officers of Schlegel and Parker.

    (b)    No written waiver, alteration, or modification made in accordance with the provisions hereof shall have effect unless it expressly references this Agreement.

    (c)    The failure of either party to enforce, at any time, any of the provisions of this Agreement, or any rights in respect thereof, or to exercise any election herein provided, shall not be considered to be a waiver to enforce such provisions, rights, or elections, or in any way to affect the validity of this Agreement.

6.7    <u>Invalidity</u>. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the other terms and provisions, and such invalid or unenforceable term or provision shall, in all events, be construed and enforced to the fullest extent permissible under law.

6.8    <u>Benefit</u>.  This Agreement shall be binding upon and inure to the benefit of successors and permitted assignees of the parties.

6.9    <u>Authority</u>.  The parties hereto represent that each has full power and authority to enter into and perform the obligations of this Agreement, and are aware of no contract, agreement, promise, or undertaking that would prevent the full execution and performance of this Agreement.

6.10    <u>Secrecy</u>.  The parties hereto agree not to disclose information concerning this Agreement without the prior written consent of the other party except to the extent such disclosure is required to permit ether party to comply with applicable laws or governmental regulations, or to the extent such disclosure is made under conditions of confidentiality: (i) to a tax, financial, legal, or other advisor of the party; or (ii) in connection with the sale of all or substantially all of a party's business to which this Agreement pertains; or (iii) otherwise in the conduct of either party's business in which event disclosure shall be

allowed only after consultation with the other party. This secrecy provision shall not prohibit the parties from issuing a joint press release discussing this Agreement, provided that such release shall have been approved in writing by both parties, or from informing a customer, supplier, or other third party in connection with a commercial program pertaining to the products licensed hereunder that any dispute between the parties which pertains to the patents or products licensed hereunder has been satisfactorily resolved and/or that the party has received a license from the other party, or from disclosing and using relevant information in any proceeding between the parties including one in which one of the parties hereto alleges a breach or a violation of this Agreement by the other party and/or seeks enforcement of this Agreement against the other party.

6.11    Assignment.  This Agreement may not be assigned or transferred by either party without the prior written consent of the other party, except that either party may assign or transfer this Agreement to a successor in interest in the event of a merger or consolidation, or a transfer or sale of all or substantially all the assets of that party to which this Agreement relates.

6.12    Force Majeure.   The default by either party under any term or provision of this Agreement on its respective part to be observed and performed shall be excused in the event, to the extent, and only during the period that the same arises from or is incident to unforeseen causes beyond the control of the excused party and not resulting from its fault or negligence, including, but not limited to, acts of a public enemy, government, or nature, strikes and lockouts, priorities, allocations, and unavailability of materials at reasonable cost.  The non-performing party, however, shall be diligent in attempting to remove any such cause and shall promptly notify the other party of its extent and probable duration.  If the nonperforming party who has delayed performance or not performed on account of circumstances beyond its control is unable to remove the causes within thirty (30) days, the other party shall have the right to terminate, without penalty, this entire Agreement or any portion of it.

6.13    Registration.  It is understood that the license granted hereunder in some instances may be subject to registration and/or approval by local governmental authorities.  The party being granted the license hereunder shall be responsible for procuring any such registration and/or approval as to such license.  The parties agree to accommodate, if possible, changes necessitated by the action of such authorities for such registration and/or approval.

6.14    Survival.  All of the representations and warranties of either party made in this Agreement, and any and all terms and provisions hereof intended to be observed and performed by either party after the expiration or termination hereof, shall survive such expiration or termination, and shall continue thereafter in full force and effect.

6.15    Counterparts.  This Agreement may be executed in one or more matching counterparts, each of which shall be deemed an original and all of which taken together shall be constitute a single agreement.

6.16   <u>Representation</u>.  The parties are both represented by counsel and have participated jointly in the negotiation and drafting of this Agreement.  In the event that an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if jointly drafted by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any prevision of this Agreement.

6.17   <u>No Challenge</u>.  Except as may be ordered by a court of competent jurisdiction during the Term of Agreement, each party shall not, either directly or indirectly, such as by or through any third party, or by assisting any third party: (a) assert as a claim, count, or defense in any dispute, arbitration, action, or other proceedings against the party, or any successor in interest thereof, that any of the patents licensed to it hereunder is invalid and/or unenforceable; or (b) file any opposition, interference, reexamination, nullity, or other proceeding or action against any such patent, or otherwise challenge or contest the patentability, ownership, validity or enforceability thereof, or seek a compulsory license thereunder.

6.18   <u>Disclaimer</u>.  During the Term of Agreement, under no circumstances shall either party be liable to the other party by reason of the termination, expiration, or non-renewal of this Agreement for compensation, reimbursement, or damages for: (a) loss of prospective compensation; (b) goodwill or the loss thereof; or (c) expenditures, investments, leases, or any type of commitment made in connection with the business of such other party or in reliance on the existence of this Agreement.

6.19   <u>Mutual Release</u>.

(a)   Subject to the terms of this Agreement and each party's compliance with the provisions thereof, each of the parties (the "releasing party") releases and discharges the other party, and its officers, shareholders, directors, agents, employees, licensees, distributors, agents, suppliers, vendees, transferees, customers, including OEM's and other purchasers, and end-users, and permitted successors and assigns, in their capacity as such (jointly and severally, the "released party") from any and all claims, demands, losses, causes of action, damages, and liabilities (collectively "Claims"), whether at law or in equity, arising up to and including the Effective Date, which are based on either party's  manufacture, use, sale, offer for sale, or importation of the products licensed hereunder, and from any and all claims or counterclaims, whether at law or in equity, which the released party has raised or could have raised in connection with the Claims of the other party.

(b)   In the event that the released party does not fully comply with each of the provisions herein, the release and discharge hereby given by the releasing party shall be null and void; provided that in no event shall Schlegel be required to pay any additional royalty or other damages for those Licensed Schlegel Products as to which the Schlegel has fulfilled its payment obligations to Parker under the terms of this Agreement.

6.20    <u>Consent Judgment</u>.    Upon execution of this Agreement, the parties shall cause their attorneys to jointly petition the Court for approval of the Consent Judgment in the form attached as Exhibit A hereto.

*[Signature Page Follows This Page]*

IN WITNESS WHEREOF, each of the Parties hereto have caused this Agreement to be executed in duplicate counterparts by its duly authorized representative.

PARKER HANNIFIN CORPORATION INC.
("Parker")

By: _____

Name: _____

Title: _____

Date: _____

And,

PARKER INTANGIBLES, LLC
("Parker")

By: _____

Name: _____

Title: _____

Date: _____

SCHLEGEL    ELECTRONIC    MATERIALS, INC.
("Schlegel")

By: _____

Name: _____

Title: _____

Date: _____

21Apr08

## SCHEDULE 1

## LICENSED PARKER PATENTS

| Appl. No. | Filing Date | Pat./Publ. No. | Issue or Publ. Date | Country | Status |
|-----------|-------------|----------------|---------------------|---------|--------|
| 09/883,785 | 18 Jan 2001 | 6,387,523 | 14 May 2002 | United States | Granted |
| 10/142,803 | 09 May 2002 | 6,521,348 | 18 Feb 2003 | United States | Granted |
| 10/381,609 | 11 Dec 2002 | 6,716,536 | 06 Apr 2004 | United States | Granted |
| 10/753,016 | 07 Jan 2004 | 6,777,095 | 17 Aug 2004 | United States | Granted |

21Apr08

**SCHEDULE 2**

**LICENSED SCHLEGEL PRODUCTS**

**E  XX  5,6  X X XXXX Series EMI Shielding Gaskets**

**SCHEDULE 3**

**LICENSED SCHLEGEL PATENTS**

| <u>Appl. No.</u> | <u>Filing Date</u> | <u>Pat./Publ. No.</u> | **Issue or**<br><u>Publ. Date</u> | <u>Country</u> | <u>Status</u> |
|---|---|---|---|---|---|
| 07/367,210 | 16 Jun 1989 | 5,045,635 | 03 Sep 1991 | United States | Granted |
| 07/604,562 | 26 Oct 1990 | 5,105,056 | 14 Apr 1992 | United States | Granted |

21Apr08

**SCHEDULE 4**

**LICENSED PARKER PRODUCTS**

**CHO-SHIELD**  **2000 Series Conductive Coatings**

**CHO-BOND**    **1000 Series Conductive Adhesives**

<u>EXHIBIT A</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and | ) | |
| PARKER INTANGIBLES, LLC | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | C.A. No. 1:07-cv-266 |
| | ) | |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

**<u>FINAL JUDGMENT BY CONSENT</u>**

    Plaintiffs Parker-Hannifin Corporation and Parker Intangibles, LLC (jointly and severally "Parker") and Defendant Schlegel Electronic Materials, Inc. ("Schlegel") having executed a License and Settlement Agreement dated April ____, 2008 (the "Agreement") in settlement of this action and having consented to the entry of this Judgment, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

    1.    This Court has jurisdiction over Schlegel and the subject matter of this action.

    2.    Parker is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 6,248,393; 6,387,523; 6,521,348; 6,716,536; and 6,777,095 including all rights of recovery for infringement thereof.

    3.    Schlegel is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 5,045,635 and 5,105,056 including all rights of recovery for infringement thereof

    4.    Each party shall bear its own costs and attorneys' fees.

    5.    This Court retains jurisdiction of this matter as necessary to resolve disputes, if any, arising between Parker and Schlegel insofar as it relates to compliance by the parties with the terms of this Judgment and with the Agreement.

ENTERED, this _____ day of _____, 2008.

_____
United States Magistrate Judge

CONSENTED AND AGREED TO:

PARKER HANNIFIN CORPORATION INC.
("Plaintiff")

By: _____

Name: _____

Title: _____

Date: _____

And,

PARKER INTANGIBLES, LLC
("Plaintiff")

By: _____

Name: _____

Title: _____

Date: _____

SCHLEGEL ELECTRONIC MATERIALS,
("Defendant")

By: _____

Name: _____

Title: _____

Date: _____

APPROVED AS TO FORM BY:

PLAINTIFFS' ATTORNEY

By:_____
    Francis DiGiovanni (#3189)
    CONNOLLY, BOVE, LODGE & HUTZ

    The Nemours Building
    1007 N. Orange Street
    P.O. Box 2207
    Wilmington, DE 19899
    (302) 658-9141
    fdigiovanni@cblh.com

Attorney for Plaintiffs
Parker-Hannifin Corporation, and
Parker Intangibles, LLC

DEFENDANT'S ATTORNEY

By:_____
    George Pazuniak (#478)
    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

    222 Delaware Avenue, Suite 1501
    Wilmington, DE 19801
    (302) 252-4320
    gpazuniak@wcsr.com

Attorney for Defendant
Schlegel Electronic Materials, Inc.

EXHIBIT G

## LICENSE, SETTLEMENT AGREEMENT AND RELEASE

THIS LICENSE, SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into as of the _____ day of March, 2008 ("the Effective Date"), by and between Parker-Hannifin Corporation, a corporation of the State of Ohio, U.S.A. having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, U.S.A. (jointly and severally with its parents, subsidiaries, related companies, affiliates, and ventures under its control or under which it is controlled including its subsidiary, Parker Intangibles, LLC, also having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, "Parker"), and Schlegel Electronic Materials, Inc, a Delaware corporation having an address at 806 Linden Avenue
Suite 100, Rochester, NY 14602-0310  (jointly and severally with its parents and subsidiaries, and its related companies, affiliates, and ventures under its control or under which it is controlled "Schlegel").

WHEREAS, Parker owns a family of patents directed to flame retardant fabric-over-foam electromagnetic interference (EMI) shielding gaskets and a direct wet coating process such as knife-over-roll or slot die for manufacturing flame-retardant shielding fabric for such gaskets and Schlegel owns a family of patents related to EMI gaskets;

WHEREAS, Parker has sued Schlegel in the U.S. District Court for the District of Delaware (the "Court"), Civil Action No. C.A. No. 1:07-cv-266 (the "Action"), alleging that certain products marketed by Schlegel infringe the claims of certain Parker patents;

WHEREAS, Schlegel has counterclaimed against Parker in the Action alleging that certain products marketed by Parker infringe the claims of certain Schlegel patents;

WHEREAS, Parker and Schlegel (jointly, the "parties") have agreed to settle the Action on the terms set forth in this Agreement, including the mutual releases, and the attached Consent Judgment; and

WHEREAS, the parties acknowledge and agree that the Court has jurisdiction over the subject matter of the Action and over each of the parties to this Agreement, and that the Court shall retain jurisdiction for the purposes of implementing and enforcing this Agreement.

NOW, THEREFORE, the parties hereby agree to resolve the present dispute between them as follows:

## ARTICLE I
## DEFINITIONS

As used herein, the following terms when written with initial capital letters shall have the meanings set forth hereinafter unless the context requires otherwise:

1.1    Licensed Parker Patents. The patents listed in Schedule 1 hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.2    <u>Licensed Schlegel Products</u>.  The products of the type identified in <u>Schedule 2</u> hereto, and any modifications or improvements thereof.

1.3    <u>Licensed Schlegel Patents</u>. The patents listed in <u>Schedule 3</u> hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.4    <u>Licensed Parker Products</u>.  The products of the type identified in <u>Schedule 4</u> hereto, any modifications or improvements thereof.

1.5    <u>Confidential Information</u>.  Any and all technical, commercial, business, financial or other confidential and/or proprietary information, and all media containing any of the foregoing, including copies or duplicates thereof, disclosed either directly or indirectly at any time before or during the Term of this Agreement by Schlegel to Parker ("Schlegel Confidential Information"), or by Parker to Schlegel ("Parker Confidential Information").

**ARTICLE II**
**NON-EXCLUSIVE LICENSES**

2.1    <u>Grant to Schlegel</u>.  Parker grants to Schlegel, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Parker Patents for Schlegel to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Schlegel Products during the Term of this Agreement.

2.2    <u>Grant to Parker</u>.  Schlegel grants to Parker, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Schlegel Patents for Parker to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Parker Products during the Term of this Agreement.

2.3    <u>No-Sublicenses</u>. Each of the non-exclusive licenses herein granted shall be indivisible, non-transferable, and without the right to grant sublicenses except to customers including an OEM or other purchaser, or to subcontract all or a portion of the manufacture of or otherwise have made the Licensed Parker or Schlegel Products as the case may be, without the prior, written consent of the granting party.

2.4    <u>Infringements</u>. Each party may promptly advise the other party by written notice of all relevant facts pertaining to any known, suspected, or threatened infringement by any third party of the patents licensed to it hereunder.  The party granting the license hereunder shall have the exclusive right, but not the obligation, to bring suit against any such infringement or alleged infringement, it being understood that all matters relating to the enforcement of the patents licensed hereunder by suit or otherwise are to be determined and/or undertaken in the sole and complete discretion of the granting party.  Should the granting party institute suit against any infringement or alleged infringement of the patents licensed hereunder, the other party, at the expense of the granting party, shall: cooperate in such enforcement and, to the extent reasonably possible, have its employees

testify when requested and make available relevant non-privileged records, papers, information, samples specimens and the like under suitable protective orders.

**ARTICLE III**
**TERM AND TERMINATION**

3.1    <u>Term</u>.  The term of each of the licenses herein granted shall commence as of the Effective Date, and shall continue as to each such license, along with the rights and obligations of each of the parties hereunder, unless earlier terminated in accordance with the terms and conditions hereof, until the expiration of the last to expire patent included in such license (the "Term").

3.2    <u>Termination</u>.  This Agreement may be terminated only upon the written consent of the other party.

**ARTICLE IV**
**DISCLAIMERS AND LIMITATION OF LIABILITY**

(a)    EACH PARTY IS SOLELY RESPONSIBLE FOR ITS ACTIVITIES CARRIED OUT UNDER THE LICENSE GRANTED HEREUNDER TO IT, AND THE OTHER PARTY MAKES NO REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, RELATING TO THE PATENT LICENSED HEREUNDER, OR THE PRODUCTS LICENSED HEREUNDER, OR TO THE OTHER PARTY'S PRACTICE, MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF. RATHER, EACH PARTY EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF TITLE, NONINFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, AND WHETHER EXPRESS, IMPLIED, OR ARISING BY OPERATION OF LAW, TRADE USAGE OR COURSE OF DEALING, PERTAINING OR RELATING TO THE PATENTS AND/OR PRODUCTS LICENSED HEREUNDER, OR TO THE PRACTICE, MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF.

(b)    Nothing in this Agreement shall be construed, whether expressly or by implication, estoppel, or otherwise, as: (i) a warranty or representation by either party as to the utility, validity or enforceability of the patents licensed hereunder, and each party understands and agrees that the other party does not warrant the utility, validity or enforceability thereof; or (ii) a requirement that either party file any patent application, or secure or maintain any patent including the patents licensed hereunder; or (iii) a warranty or representation by either party as to other party's freedom from infringement, misappropriation, or other violation, or from any allegations of the same, of any third party patents, trade or service marks, mask works, domain names, tradenames, trade dress, trade secrets, confidential or proprietary information, copyrights, or other intellectual property or proprietary rights, and neither party shall indemnify, defend, or otherwise hold the other party harmless against any such infringement, misappropriation, or other violation, or any such allegations of the same; or (iv) a warranty or

representation by either party as to the other party's freedom from third party infringers or alleged infringers of the patents licensed hereunder, and neither party shall be under any obligation to enforce the patents licensed hereunder or any of its patents or other intellectual property or proprietary rights against any such infringers or alleged infringers of the patents licensed hereunder; or (v) conferring upon either party any right to use in advertising, publicity, or the like any name, tradename, or trademark of the other party, and neither party shall use any of the same; or (vi) granting to either party by implication, estoppel, or otherwise any licenses or rights under any patents or patent applications of the other party other than the patents licensed hereunder or released hereunder, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, design, mask work, or other intellectual property or proprietary right or product of the other party, and each party understands and agrees that there is no express, implied, or other license to it under any patent or application for patent of the other party, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, mask work, design, or other intellectual property or proprietary right or product of the other party, other than the patents or other rights licensed or released hereunder; or (vii) an obligation by either party to furnish know-how or any other technical, commercial, business, or other information or technology to the other party expect as otherwise expressly stated herein.

(c)    IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO LOST PROFITS ARISING FROM OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR RELATING TO THE LICENSED PATENTS OR LICENSEE'S USE THEREOF, OR TO THE LICENSED PRODUCTS OR LICENSEE'S MANUFACTURE, USE, OFFER FOR SALE, OR SALE THEREOF, WHETHER ALLEGED TO ARISE FROM PERSONAL INJURY, PROPERTY DAMAGE, SHUTDOWN OR NON-OPERATION OF ANY FACILITY, OR ANY OTHER CAUSE, OR UNDER ANY THEORY OF LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PATENT INFRINGEMENT OR OTHERWISE, AND REGARDLESS OF WHETHER EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

## ARTICLE V
## MISCELLANEOUS

5.1    Disputes.  The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between representatives who have authority to settle the controversy. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

5.2    <u>Notices</u>.

    (a)    All notices, requests and other communications hereunder shall be in a writing delivered by hand, overnight service with receipt signature requested or certified mail, postage prepaid, return receipt requested, and shall be deemed to have been duly given at the time of receipt as evidenced by the dated written return receipt of the receiving party.

    (b)    All correspondence shall be sent or dispatched as follows:

        If to Parker:      Parker Chomerics Division
                                77 Dragon Court
                                Woburn, Massachusetts 01888
                                Attention: Controller

        With a copy to:    Parker-Hannifin Corporation
                                6035 Parkland Boulevard
                                Cleveland, Ohio 44124-4141
                                Attention: Secretary

        If to Schlegel:    Schlegel Electronic Materials, Inc.
                                  806 Linden Avenue
                                Suite 100
                                PO Box 20310
                                Rochester, NY 14602-0310
                                Attention: Chief Financial Officer

    provided, however, if either party shall have designated a different address by written notice given as provided above and received by the other party, then to the last address so designated.

5.3    <u>Independent Contractors</u>.  The relationship between Schlegel and Parker shall at all times be that of independent contracting parties. Neither party shall in any manner represent that it or its employees or agents are employees or agents of the other party, and nothing contained in this Agreement shall be construed as authorizing either party to create or assume any obligation or liability in the name of the other party or subject the other party to any obligation or liability.  This Agreement shall not constitute, create, give effect to or otherwise imply a joint venture, pooling arrangement, partnership or formal business organization of any kind.  Nothing herein shall be construed as providing for the sharing of profit or losses arising out of the efforts of either or both parties.

5.4    <u>Entire Agreement</u>.  This Agreement states the entire agreement between Schlegel and Parker with respect to the subject matter herein involved, and supersedes all proposals, communications or agreements, whether oral or written..

5.5 <u>Governing Law</u>. This Agreement shall be construed by and interpreted in accordance with the laws of the United States and the State of Delaware, without regard to its or any other conflict of law provisions or principles.  All questions concerning the construction or effect of patent applications and patents shall be decided in accordance with the laws of the country in which the particular patent application or patent concerned has been filed or granted, as the case may be. The parties specifically elect to not be bound in any way by the United Nations Convention on Contracts for the International Sale of Goods.

5.6 <u>Waiver</u>.

    (a)    No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless made in writing and signed by the duly authorized corporate officers of Schlegel and Parker.

    (b)    No written waiver, alteration, or modification made in accordance with the provisions hereof shall have effect unless it expressly references this Agreement.

    (c)    The failure of either party to enforce, at any time, any of the provisions of this Agreement, or any rights in respect thereof, or to exercise any election herein provided, shall not be considered to be a waiver to enforce such provisions, rights, or elections, or in any way to affect the validity of this Agreement.

5.7 <u>Invalidity</u>. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the other terms and provisions, and such invalid or unenforceable term or provision shall, in all events, be construed and enforced to the fullest extent permissible under law.

5.8 <u>Benefit</u>.  This Agreement shall be binding upon and inure to the benefit of successors and permitted assignees of the parties.

5.9 <u>Authority</u>.  The parties hereto represent that each has full power and authority to enter into and perform the obligations of this Agreement, and are aware of no contract, agreement, promise, or undertaking that would prevent the full execution and performance of this Agreement.

5.10 <u>Secrecy</u>.  The parties hereto agree not to disclose information concerning this Agreement without the prior written consent of the other party except to the extent such disclosure is required to permit either party to comply with applicable laws or governmental regulations, or to the extent such disclosure is made under conditions of confidentiality: (i) to a tax, financial, legal, or other advisor of the party; or (ii) in connection with the sale of all or substantially all of a party's business to which this Agreement pertains; or (iii) otherwise in the conduct of either party's business in which event disclosure shall be allowed only after consultation with the other party. This secrecy provision shall not prohibit the parties from issuing a joint press release discussing this Agreement, provided that such release shall have been approved in writing by both parties, or from informing a customer, supplier, or other third party in connection with a commercial program

pertaining to the products licensed hereunder that any dispute between the parties which pertains to the patents or products licensed hereunder has been satisfactorily resolved and/or that the party has received a license from the other party, or from disclosing and using relevant information in any proceeding between the parties including one in which one of the parties hereto alleges a breach or a violation of this Agreement by the other party and/or seeks enforcement of this Agreement against the other party.

5.11    Assignment.  This Agreement may not be assigned or transferred by either party without the prior written consent of the other party, except that either party may assign or transfer this Agreement to a successor in interest in the event of a merger or consolidation, or a transfer or sale of all or substantially all the assets of that party to which this Agreement relates.

5.12    Registration.  It is understood that the license granted hereunder in some instances may be subject to registration and/or approval by local governmental authorities.  The party being granted the license hereunder shall be responsible for procuring any such registration and/or approval as to such license.  The parties agree to accommodate, if possible, changes necessitated by the action of such authorities for such registration and/or approval.

5.13    Survival.  All of the representations and warranties of either party made in this Agreement, and any and all terms and provisions hereof intended to be observed and performed by either party after the expiration or termination hereof, shall survive such expiration or termination, and shall continue thereafter in full force and effect.

5.14    Counterparts.  This Agreement may be executed in one or more matching counterparts, each of which shall be deemed an original and all of which taken together shall be constitute a single agreement.

5.15    Representation.  The parties are both represented by counsel and have participated jointly in the negotiation and drafting of this Agreement.  In the event that an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if jointly drafted by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any prevision of this Agreement.

5.16    No Challenge.  Except as may be ordered by a court of competent jurisdiction during the Term of Agreement, each party shall not, either directly or indirectly, such as by or through any third party, or by assisting any third party: (a) assert as a claim, count, or defense in any dispute, arbitration, action, or other proceedings against the party, or any successor in interest thereof, that any of the patents licensed to it hereunder is invalid and/or unenforceable; or (b) file any opposition, interference, reexamination, nullity, or other proceeding or action against any such patent, or otherwise challenge or contest the patentability, ownership, validity or enforceability thereof, or seek a compulsory license thereunder.

5.17    Disclaimer.  During the Term of Agreement, under no circumstances shall either party be liable to the other party by reason of the termination, expiration, or non-renewal of this Agreement for compensation, reimbursement, or damages for: (a) loss of prospective compensation; (b) goodwill or the loss thereof; or (c) expenditures, investments, leases, or any type of commitment made in connection with the business of such other party or in reliance on the existence of this Agreement.

5.18    Mutual Release.

(a)    Subject to the terms of this Agreement and each party's compliance with the provisions thereof, each of the parties (the "releasing party") forever releases and discharges the other party, and its officers, shareholders, directors, agents, employees, licensees, distributors, agents, suppliers, vendees, transferees, customers, including any OEM and other purchasers, and end-users, and permitted successors and assigns, in their capacity as such (jointly and severally, the "released party") from any and all claims, demands, losses, causes of action, damages, and liabilities (collectively "Claims"), whether at law or in equity with respect to any of the claims of any of the Licensed Parker Patents or Licensed Schlegel Patents, including either party's past or, in accordance with the terms of the license herein granted, present or future manufacture, use, sale, offer for sale, or importation of any ~~past or any future product or process~~ of the products licensed hereunder, and from any and all claims or counterclaims, whether at law or in equity, which the released or releasing party has raised or could have raised in connection with the Claims of the other party.

(b)    In the event that the released party does not fully comply with each of the provisions herein, the release and discharge hereby given by the releasing party shall be null and void; provided that in no event shall either party be required to pay any additional royalty or other damages for those Licensed Products as to which the that party has fulfilled its payment obligations to the other party under the terms of this Agreement.

5.19    Consent Judgment.  Upon execution of this Agreement, the parties shall cause their attorneys to jointly petition the Court for approval of the Consent Judgment in the form attached as Exhibit A hereto.

*[Signature Page Follows This Page]*

IN WITNESS WHEREOF, each of the Parties hereto have caused this Agreement to be executed in duplicate counterparts by its duly authorized representative.

PARKER HANNIFIN CORPORATION ("Parker")

SCHLEGEL ELECTRONIC MATERIALS, INC. ("Schlegel")

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

And,

PARKER INTANGIBLES, LLC ("Parker")

By: _____

Name: _____

Title: _____

Date: _____

## SCHEDULE 1

## LICENSED PARKER PATENTS

| Appl. No. | Filing Date | Pat./Publ. No. | Issue or Publ. Date | Country | Status |
|-----------|-------------|----------------|---------------------|---------|--------|
| 09/250,338 | 16 Feb 1999 | 6,248,393 | 19 June 2001 | United States | Granted |
| 09/883,785 | 18 Jan 2001 | 6,387,523 | 14 May 2002 | United States | Granted |
| 10/142,803 | 09 May 2002 | 6,521,348 | 18 Feb 2003 | United States | Granted |
| 10/381,609 | 11 Dec 2002 | 6,716,536 | 06 Apr 2004 | United States | Granted |
| 10/753,016 | 07 Jan 2004 | 6,777,095 | 17 Aug 2004 | United States | Granted |

28Apr08

**SCHEDULE 2**

**LICENSED SCHLEGEL PRODUCTS**

**E_XX_5,6_X X XXXX Series** Fabric-Over-Foam EMI Shielding Gaskets

**SCHEDULE 3**

**LICENSED SCHLEGEL PATENTS**

| Appl. No. | Filing Date | Pat./Publ. No. | Issue or Publ. Date | Country | Status |
|-----------|-------------|----------------|---------------------|---------|--------|
| 07/367,210 | 16 Jun 1989 | 5,045,635 | 03 Sep 1991 | United States | Granted |
| 07/604,562 | 26 Oct 1990 | 5,105,056 | 14 Apr 1992 | United States | Granted |

28Apr08

**SCHEDULE 4**

**LICENSED PARKER PRODUCTS**

**CHO-SHIELD**  **2000 Series Conductive Coatings**

**CHO-BOND**   **1000 Series Conductive Adhesives**

<u>EXHIBIT A</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and | ) | |
| PARKER INTANGIBLES, LLC | ) | |
|      Plaintiffs, | ) | |
| | ) | |
|      v. | ) | C.A. No. 1:07-cv-266 |
| | ) | |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | ) | |
| | ) | |
|      Defendant. | ) | |

**<u>FINAL JUDGMENT BY CONSENT</u>**

Plaintiffs Parker-Hannifin Corporation and Parker Intangibles, LLC (jointly and severally "Parker") and Defendant Schlegel Electronic Materials, Inc. ("Schlegel") having executed a License, Settlement Agreement and Release dated April ____, 2008 (the "Agreement") in settlement of this action and having consented to the entry of this Judgment, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

     1.     This Court has jurisdiction over the parties and the subject matter of this action.

     2.     Parker is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 6,248,393; 6,387,523; 6,521,348; 6,716,536; and 6,777,095 including all rights of recovery for infringement thereof.

     3.     Schlegel is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 5,045,635 and 5,105,056 including all rights of recovery for infringement thereof

     4.     Each party shall bear its own costs and attorneys' fees.

     5.     This Court retains jurisdiction of this matter as necessary to resolve disputes, if any, arising between Parker and Schlegel insofar as it relates to compliance by the parties with the terms of this Judgment and with the Agreement.

ENTERED, this _____ day of _____, 2008.

_____
United States Magistrate Judge

CONSENTED AND AGREED TO:

PARKER HANNIFIN CORPORATION          SCHLEGEL ELECTRONIC MATERIALS, INC.
("Plaintiff")                        ("Defendant")


By: _____         By: _____

Name: _____         Name: _____

Title: _____        Title: _____

Date: _____         Date: _____

And,


PARKER INTANGIBLES, LLC
("Plaintiff")


By: _____

Name: _____

Title: _____

Date: _____


APPROVED AS TO FORM BY:

PLAINTIFFS' ATTORNEY                  DEFENDANT'S ATTORNEY

By:_____          By:_____
    Francis DiGiovanni (#3189)            George Pazuniak (#478)
    CONNOLLY, BOVE, LODGE & HUTZ          WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

    The Nemours Building                  222 Delaware Avenue, Suite 1501
    1007 N. Orange Street                 Wilmington, DE 19801
    P.O. Box 2207                         (302) 252-4320
    Wilmington, DE 19899                  gpazuniak@wcsr.com
    (302) 658-9141
    fdigiovanni@cblh.com

Attorney for Plaintiffs                Attorney for Defendant
Parker-Hannifin Corporation, and       Schlegel Electronic Materials, Inc.
Parker Intangibles, LLC

EXHIBIT H



## Think Schlegel EMI For Shielding

As the originator of the fabric-clad foam EMI shielding technology, Schlegel EMI is the industry's most trusted name. We continue to set the standard for quality and innovation, designing advanced solutions for a wide range of applications. And our worldwide locations ensure that you get what you need, when and where you need it.

# PROFILE
## Selection Guide

**EMI Shielding Products**



       

# Reference Guide: Cross-Reference Guide to EMI Shieling Gaskets

Schlegel EMI produces a range of shielding products including Conductive Tapes, Conductive Elastomers and Fabric-over-Foam gaskets. The listing below is a numerical listing of the fabric-over-foam profiles. For additional product and/or ordering information, please contact a Schlegel EMI representative.

| Profile | Complex Shape | Dimensions | Page # | Profile | Complex Shape | Dimensions | Page # |
|---|---|---|---|---|---|---|---|
| E01 | Rectangle | 3.0mm x 4.0mm | 4 | E88 | Rectangle | 0.5mm x 7.0mm | 3 |
| E02 | C-Fold | 23.9mm x 14.0mm | 7 | E90 | D-Shape | 3.6mm x 6.4mm | 6 |
| E03 | Rectangle | 1.0mm x 4.0mm | 3 | E91 | Rectangle | 0.5mm x 10.0mm | 3 |
| E04 | D-Shape | 4.8mm x 7.6mm | 6 | E92* | C-Fold | 6.0mm x 7.4mm | 7 |
| E05 | Rectangle | 7.5mm x 15.0mm | 4 | E93 | Mini-Clip | 2.5mm x 8.4mm | 5 |
| E06 | Rectangle | 1.0mm x 7.0mm | 3 | E95* | D-Clip | 3.2mm x 7.4mm | 6 |
| E07 | Rectangle | 2.0mm x 41.3mm | 3 | E96 | Knife Edge | 2.7mm x 8.0mm | 5 |
| E08 | Rectangle | 2.0mm x 10.0mm | 3 | E97 | D-Shape | 1.2mm x 8.0mm | 3 |
| E09 | Rectangle | 2.0mm x 28.6mm | 3 | E98 | C-Fold | 9.8mm x 10.7mm | 7 |
| E10 | D-Shape | 6.4mm x 9.5mm | 7 | E98(Riveted) | C-Fold | 9.8mm x 10.7mm | 7 |
| E11 | Rectangle | 1.0mm x 10.0mm | 3 | E99* | Rectangle | 1.0mm x 13.0mm | 3 |
| E12 | Rectangle | 1.0mm x 5.0mm | 3 | EA1 | D-Shape | 3.1mm x 6.4mm | 6 |
| E13 | L-Shape | 5.5mm x 12.0mm | 5 | EA2* | L-Shape | 3.8mm x 10.2mm | 5 |
| E14 | Square | 5.1mm x 5.1mm | 4 | EA3 | D-Shape | 3.1mm x 3.8mm | 6 |
| E16 | C-Fold | 18.0mm x 14.2mm | 7 | EA4* | Round | 2.5mm diameter | 5 |
| E17 | D-Shape | 1.5mm x 3.8mm | 6 | EA5 | D-Shape | 4.0mm x 6.0mm | 6 |
| E18 | Square | 3.0mm x 3.0mm | 4 | EA6 | D-Shape | 6.4mm x 9.5mm | 7 |
| E19* | Knife Edge | 6.4mm x 19.1mm | 5 | EA7 | P-Shape | 11.4mm x 16.0mm | 5 |
| E20 | Rectangle | 9.5mm x 25.4mm | 4 | EA8 | Rectangle | 1.5mm x 27.0mm | 3 |
| E21 | C-Fold | 6.4mm x 5.9mm | 7 | EA9 | T-Shape | 4.0mm x 6.2mm | 5 |
| E24 | Rectangle | 2.0mm x 12.7mm | 3 | EB1* | D-Clip | 4.7mm x 12.2mm | 6 |
| E25 | Rectangle | 6.4mm x 12.7mm | 4 | EB4* | Square | 4.0mm x 4.0mm | 4 |
| E26 | D-Shape | 3.1mm x 9.1mm | 6 | EB5 | Rectangle | 1.5mm x 14.0mm | 3 |
| E27 | Self-Mounting | 16.2mm x 5.8mm | 5 | EB6* | C-Clip | 6.1mm x 7.5mm | 7 |
| E28 | Rectangle | 3.2mm x 12.7mm | 4 | EB8 | L-Shape | 14.0mm x 15.0mm | 5 |
| E29 | Rectangle | 1.0mm x 25.4mm | 3 | EB9 | Mini-Clip | 3.7mm x 6.5mm | 5 |
| E30* | Rectangle | 2.0mm x 60.0mm | 3 | EC2 | U-Shape | 9.0mm x 11.0mm | 7 |
| E31 | Knife Edge | 2.7mm x 11.3mm | 5 | EC3 | C-Fold | 6.4mm x 7.1mm | 7 |
| E32 | C-Fold | 17.1mm x 14.7mm | 7 | EC5 | Rectangle | 1.0mm x 41.3mm | 3 |
| E34* | Environmental Seal | 17.3mm x 10.2mm | 5 | EC6 | Rectangle | 3.0mm x 40.9mm | 4 |
| E35* | D-Clip | 4.0mm x 7.4mm | 6 | EC7 | Rectangle | 2.0mm x 7.5mm | 3 |
| E36 | Rectangle | 25.0mm x 20.0mm | 5 | EC9 | Low D-Shape | 5.0mm x 17.2mm | 6 |
| E37 | Rectangle | 1.0mm x 3.0mm | 3 | ED1 | T-Shape | 4.0mm x 6.2mm | 5 |
| E39 | Rectangle | 1.0mm x 18.0mm | 3 | ED2 | L-Shape | 5.0mm x 8.5mm | 5 |
| E40 | C-Fold | 10.0mm x 10.9mm | 7 | ED3 | Rectangle | 2.0mm x 17.5mm | 3 |
| E41 | T-Shape | 5.1mm x 4.8mm | 5 | ED4 | T-Shape | 6.0mm x 3.9mm | 5 |
| E43* | D-Clip | 4.0mm x 7.4mm | 6 | ED5 | Rectangle | 3.0mm x 43.0mm | 4 |
| E44* | Rectangle | 3.0mm x 25.4mm | 4 | ED7 | D-Shape | 2.3mm x 12.7mm | 6 |
| E45* | D-Shape | 2.3mm x 3.9mm | 6 | ED8 | C-Fold | 11.4mm x 16.0mm | 7 |
| E47 | Rectangle | 4.6mm x 41.3mm | 4 | ED9 | Rectangle | 1.5mm x 5.0mm | 3 |
| E48* | L-Shape | 7.9mm x 18.6mm | 5 | EG2 | Rectangle | 1.5mm x 10.0mm | 3 |
| E49 | Square | 17.0mm x 17.0mm | 4 | EG3 | C-Fold | 9.8mm x 10.7mm | 7 |
| E50* | D-Shape | 4.3mm x 9.7mm | 6 | EG4 | D-Shape | 3.8mm x 3.8mm | 6 |
| E51 | Low D-Shape | 2.0mm x 17.1mm | 6 | EG5 | U-Shape (Environmental Seal) | 9.5mm x 12.7mm | 7 |
| E52 | Wedge | 4.0mm x 8.2mm | 5 | EG6* | D-Shape | 1.8mm x 4.6mm | 6 |
| E53 | T-Shape | 7.6mm x 6.9mm | 5 | EG7 | Rectangle | 2.0mm x 19.0mm | 3 |
| E55 | C-Clip | 9.8mm x 12.2mm | 7 | EG8 | Square | 8.0mm x 8.0mm | 4 |
| E56 | C-Clip | 6.1mm x 7.4mm | 7 | EG9 | Rectangle | 6.4mm x 41.3mm | 4 |
| E57 | D-Shape | 2.3mm x 2.3mm | 6 | EH1 | D-Shape | 4.0mm x 12.7mm | 6 |
| E58 | Rectangle | 2.0mm x 21.0mm | 3 | EH2 | D-Shape | 2.0mm x 17.1mm | 6 |
| E59 | Rectangle | 0.5mm x 5.0mm | 3 | EH3 | C-Fold | 8.0mm x 8.0mm | 7 |
| E60 | P-Shape | 3.3mm x 13.2mm | 5 | EH4 | Rectangle | 2.0mm x 22.0mm | 3 |
| E61 | Rectangle | 1.5mm x 7.0mm | 3 | EH5 | D-Shape | 9.5mm x 12.7mm | 7 |
| E62 | Rectangle | 3.2mm x 9.5mm | 4 | EH6 | Knife Edge | 2.7mm x 11.3mm | 5 |
| E63 | Square | 9.5mm x 9.5mm | 4 | EH7 | D-Shape | 4.0mm x 12.7mm | 6 |
| E64 | D-Shape | 4.7mm x 12.2mm | 6 | EH8 | T-Shape | 10.0mm x 10.0mm | 5 |
| E65 | Rectangle | 3.7mm x 21.0mm | 4 | EH9 | C-Fold | 9.8mm x 10.6mm | 7 |
| E66 | Rectangle | 6.4mm x 9.5mm | 4 | EJ1 | D-Shape | 5.5mm x 12.7mm | 7 |
| E67 | Knife Edge | 2.7mm x 11.3mm | 5 | EJ2 | T-Shape | 4.0mm x 6.2mm | 5 |
| E68 | Rectangle | 9.5mm x 12.7mm | 4 | EJ4 | Rectangle | 6.0mm x 8.0mm | 4 |
| E69 | Round | 2.5mm diameter | 5 | EJ5 | D-Shape | 3.0mm x 12.7mm | 6 |
| E70 | D-Shape | 3.2mm x 6.4mm | 4 | EJ6 | Rectangle | 1.0mm x 15.0mm | 3 |
| E73 | Rectangle | 5.0mm x 8.0mm | 4 | EJ7 | Rectangle | 5.0mm x 9.0mm | 4 |
| E74 | Rectangle | 3.3mm x 4.8mm | 4 | EJ8 | D-Shape | 1.8mm x 10.0mm | 6 |
| E75 | Rectangle | 15.9mm x 25.4mm | 4 | EJ9 | D-Shape | 2.0mm x 10.0mm | 6 |
| E77 | Rectangle | 2.0mm x 7.0mm | 3 | EK1 | D-Shape | 2.5mm x 10.0mm | 6 |
| E78 | Rectangle | 4.0mm x 15.0mm | 4 | EK2 | D-Shape | 3.0mm x 10.0mm | 6 |
| E79 | Square | 6.0mm x 6.0mm | 4 | EK3 | D-Shape | 3.5mm x 10.0mm | 6 |
| E80 | Rectangle | 11.5mm x 10.5mm | 4 | EK4 | D-Shape | 1.8mm x 12.7mm | 6 |
| E81 | Rectangle | 2.0mm x 4.0mm | 3 | EK5 | D-Shape | 2.0mm x 12.7mm | 6 |
| E83* | Rectangle | 0.5mm x 4.0mm | 3 | EK6 | D-Shape | 2.5mm x 12.7mm | 6 |
| E84 | Rectangle | 9.5mm x 20.0mm | 4 | EK7 | D-Shape | 3.0mm x 12.7mm | 6 |
| E85 | C-Fold | 11.8mm x 10.7mm | 7 | EK8 | D-Shape | 3.5mm x 12.7mm | 6 |
| E86 | Self Mounting | 18.8mm x 9.7mm | 5 | UC301612 | Wedge | 11.1mm x 33.3mm | 5 |
| E87 | Double D-Shape | 2.8mm x 9.7mm | 6 | | | | |

These profiles are also recognized under CSA C ▩ (Canada) and IEC 707, ISO 1210, and ISO 9773 Classifications

* Contact your sales or customer service representative for details.

# Conductive Materials Specifications

For more information, samples, or design consultation, contact your Schlegel EMI representative.

The core of Schlegel EMI shielding gaskets is open-celled polyether polyurethane foam in a high-resiliency (HB) formula. Compression set of foam is encapsulated is 1% at ambient temperature, and <5% set at 70°C (158°F) when compressed 50% for 22 hours. Many profiles are available with resilient fire retardant (V-O) foam and are recognized UL 94 V-O under the component program of Underwriters Laboratories, Inc.

## Fabric claddings* include:

| | | |
|---|---|---|
| **Nickel/Copper C12** *(polyester woven)* *\*preferred cladding* | **Surface Resistivity** | 0.02Ω/■ and CpK≥2.0 |
| | **Shielding Effectiveness** | Shielding performance of 1/4" x 3/8" gasket per MIL-G 83528B in frequencies of 20 MHz to 10 GHz: **97.4 dB** (average). Note: Gasket geometry and application determine actual shielding effectiveness. |
| | **Contact Resistance** | 0.08Ω-inch at 1 Kg load/inch |
| | **Abrasion Resistance** | No change in surface resistivity: 1,000,000 cycles |
| **Nickel/Copper C70** *(polyester ripstop)* *\*preferred cladding* | **Surface Resistivity** | 0.066Ω/■ and CpK≥2.0 |
| | **Shielding Effectiveness** | Shielding performance of 1/4" x 3/8" gasket per MIL-G 83528B in frequencies of 20 MHz to 10 GHz: **96 dB** (average). Note: Gasket geometry and application determine actual shielding effectiveness. |
| | **Contact Resistance** | 0.11Ω-inch at 1 Kg load/inch |
| | **Abrasion Resistance** | No change in surface resistivity: 800,000 cycles |
| **Silver C2** *(nylon ripstop)* *\*special order* | **Surface Resistivity** | 0.5Ω/■ and CpK≥2.0 |
| | **Shielding Effectiveness** | Shielding performance of 1/4" x 3/8" gasket per MIL-G 83528B in frequencies of 20 MHz to 10 GHz: **95 dB** (average). Note: Gasket geometry and application determine actual shielding effectiveness. |
| | **Contact Resistance** | <1.0Ω-inch at 1 Kg load/inch |
| | **Abrasion Resistance** | No change in surface resistivity: 800,000 cycles |

*for the latest information on Schlegel EMI's fabrics and foam, please visit our web site, www.schlegelemi.com

Surface resistivity to ASTM F390 modified. Contact resistance to Schlegel EMI LP-3001. Abrasion resistance to ASTM D3886. The preceding information is believed accurate by Schlegel EMI. In no event, however, shall Schlegel EMI have any liability whatsoever for inaccuracies or omissions contained therein. In all cases, details and values should be verified by the customer. These products are covered by various U.S. and foreign patents. UL is a registered trademark of Underwriters Laboratories, Inc.

| Rectangle | Knife Edge | Self-Mounting | P-Shape |
|---|---|---|---|
| D-Shape | L-Shape | C-Fold | T-Shape |
| Environmental Seal | Wedge | Mini Clip | Round |
| U-Shape | | | |

         

| LOW CLOSURE FORCE | I/O | LINEAL | REEL | BI-DIRECTIONAL WIPING | DIRECTIONAL WIPING | SHEAR FORCE | COMPRESSION | UL 94-HB HORIZONTAL BURN | UL 94V-O VERTICAL BURN |

# Part Number Guide
# Schlegel EMI Shielding Gaskets

# E    XX    X    X X    XXXXX

**E = EMI**

**SHAPE I.D.**

**FOAM TYPE**
1 = UL 94 HB recognized (gray)
5 = UL 94 V-O recognized (blue)
   Bromine Free Formulation
6 = UL 94 V-O recognized (blue)
   under the component program of
   Underwriters Laboratories, Inc. in
   specified claddings and thicknesses

**CONDUCTIVE FABRIC CLADDINGS**
3 = Nickel/Copper C70 Polyester Ripstop
4 = Nickel/Copper C12 Polyester Plain Weave
9 = Silver C2 Nylon Ripstop

**Think Schlegel EMI
For Shielding**

**FINISHING/ATTACHMENT SYSTEM**
– = No Pressure-Sensitive          A = PSA on Adjacent Side
   Adhesive (PSA)                  B = PSA on Backside
G = Die Cut                        T = PSA
N = Narrow PSA                     L = PSA on Lead Edge or
H = High Shear PSA                    Opposite Seam Side
C = PSA in Center                  W= Wide PSA
P = PSA on Inside Leg              K = Kiss Cut + PSA
Z = Wide Release Liner™ Tape       D = Conductive Adhesive (for mechanical issues)
*2T/2H = 2 rows of PSA
   on same side

**LENGTH (in inches)**
(all O's if continuous)
Examples:    04800 cut-to-length*    48.000" [121.9cm]
             00138 cut-to-length*    01.375" [034.9mm]
             00152 cut-to-length*    01.520" [038.6mm]

**EMI Shielding Products**



electronic materials

**\*If specifying 2T or 2H, drop the first dight of the length field.  i.e. 2T4800**

www.schlegelemi.com

© Schlegel Electronic Materials, Inc.

The preceding information is believed accurate by Schlegel EMI. In no event, however, shall Schlegel EMI have any liability
whatsoever for inaccuracies or omissions contained therein. In all cases, details and values shoulder be verified by the
customer. These product are covered by various U.S. and foreign patents.

UL is a registered trademark of Underwriters Laboratories, Inc.

**Rectangle**

| E83⁺ | E59 | E88 | E91 | E37 |
|---|---|---|---|---|
| 0.5mm x 4.0mm<br>.020" x .157" | 0.5mm x 5.0mm<br>.020" x .197" | 0.5mm x 7.0mm<br>.020" x .276" | 0.5mm x 10.0mm<br>.020" x .394" | 1.0mm x 3.0mm<br>.039" x .118" |

| E03 | E12 | E06 | E11 | E99⁺ |
|---|---|---|---|---|
| 1.0mm x 4.0mm<br>.039" x .157" | 1.0mm x 5.0mm<br>.039" x .197" | 1.0mm x 7.0mm<br>.039" x .276" | 1.0mm x 10.0mm<br>.039" x .394" | 1.0mm x 13.0mm<br>.039" x .512" |

| EJ6 | E39 | E29 | EC5 |
|---|---|---|---|
| 1.0mm x 15.0mm<br>.039" x .591" | 1.0mm x 18.0mm<br>.039" x .710" | 1.0mm x 25.4mm<br>.039" x 1.0" | 1.0mm x 41.3mm<br>.039" x 1.627" |

**Rectangle**

| E97 | ED9 | E61 | EG2 | EB5 |
|---|---|---|---|---|
| 1.2mm x 8.0mm<br>.049" x .315" | 1.5mm x 5.0mm<br>.059" x .197" | 1.5mm x 7.0mm<br>.059" x .275" | 1.5mm x 10.0mm<br>.059" x .390" | 1.5mm x 14.0mm<br>.059" x .551" |

| EA8 | E81 | E77 | EC7 | E08 |
|---|---|---|---|---|
| 1.5mm x 27.0mm<br>.059" x 1.063" | 2.0mm x 4.0mm<br>.079" x .157" | 2.0mm x 7.0mm<br>.079" x .275" | 2.0mm x 7.5mm<br>.079" x .295" | 2.0mm x 10.0mm<br>.079" x .394" |

| E24 | ED3 | EG7 | E58 | EH4 |
|---|---|---|---|---|
| 2.0mm x 12.7mm<br>.079" x .500" | 2.0mm x 17.5mm<br>.079" x .689" | 2.0mm x 19.0mm<br>.079" x .750" | 2.0mm x 21.0mm<br>.079" x .827" | 2.0mm x 22.0mm<br>.079" x .866" |

**Rectangle**

| E09 | E07 | E30⁺ |
|---|---|---|
| 2.0mm x 28.6mm<br>.079" x 1.125" | 2.0mm x 41.3mm<br>.079" x 1.625" | 2.0mm x 60.0mm<br>.079" x 2.362" |

✧ Contact your sales or customer service representative for details.





| | | | | |
|---|---|---|---|---|
| **E36** (Rectangle) | **E60** (P-Shape) 3.3mm x 13.2mm .130" x .402" | **EA7** 11.4mm x 16.0mm .448" x .630" | **E52** 4.0mm x 8.2mm .157" x .324" | **UC301612** (Wedge) 11.1mm x 33.3mm .436" x 1.313" |
| 25.0mm x 20.0mm .984" x .787" | **E93** (Mini-Clip) 2.5mm x 8.4mm .100" x .330" | **EB9** 3.7mm x 6.5mm .145" x .256" | **E27** 16.2mm x 5.8mm .638" x .230" | **E86** (Self-Mounting) 18.8mm x 9.7mm .740" x .380" |
| **EA2+** (L-Shape) 3.8mm x 10.2mm .150" x .400" | **ED2** 5.0mm x 8.5mm .197" x .335" | **E13** 5.5mm x 12.0mm .217" x .472" | **E48+** 7.9mm x 18.6mm .312" x .731" | **EB8** (L-Shape) 14.0mm x 15.0mm .551" x .591" |
| **E96** (Knife Edge) 2.7mm x 8.0mm .106" x .315" | **E67** 2.7mm x 11.3mm .106" x .445" | **EH6** 2.7mm x 11.3mm .106" x .445" | **E31** 2.7mm x 11.3mm .106" x .445" | **E19+** (Knife Edge) 6.4mm x 19.1mm .250" x .750" |
| **ED1** 4.0mm x 6.2mm .157" x .244" | **EA9** 4.0mm x 6.2mm .157" x .244" | **E41** 5.1mm x 4.8mm .200" x .190" | **ED4** 3.9mm x 6.0mm .152" x .235" | **E53** (T-Shape) 7.6mm x 6.9mm .200" x .190" |
| **EJ2** (T-Shape) 4.0mm x 6.2mm .157" x .244" | **EH8** 10.00mm x 10.00mm .395" x .395" | **EA6+** 2.5mm diameter .098" diameter | **EP1** 2.5mm diameter .098" diameter | **E34+** (Environmental Seal) 17.3mm x 10.2mm .681" x .402" |

**Wide Release Liner**™ pressure-sensitive adhesive can be specified on any Schlegel EMI shielding gasket for easy pick-n-place attachment.

✦ Contact your sales or customer service representative for details.

5

| | | | | |
|---|---|---|---|---|
| **E17** | **EG6**+ | **EJ8** | **EK4** | **EJ9** |
| 1.5mm x 3.8mm<br>.060" x .150" | 1.8mm x 4.6mm<br>.070" x .180" | 1.8mm x 10.0mm<br>.070" x .394" | 1.8mm x 12.7mm<br>.070" x .500" | 2.0mm x 10.0mm<br>.080" x .394" |
| **EK5** | **E51** | **EH2** | **E57** | **E45**+ |
| 2.0mm x 12.7mm<br>.080" x .500" | 2.0mm x 17.1mm<br>.080" x .675" | 2.0mm x 17.2mm<br>.080" x .675" | 2.3mm x 2.3mm<br>.090" x .090" | 2.3mm x 3.9mm<br>.090" x .155" |
| **ED7** | **EK1** | **EK6** | **E87** | **EK2** |
| 2.3mm x 12.7mm<br>.080" x .500" | 2.5mm x 10.0mm<br>.098" x .394" | 2.5mm x 12.7mm<br>.098" x .500" | 2.8mm x 9.7mm<br>.110" x .380" | 3.0mm x 10.0mm<br>.118" x .394" |
| **EJ5** | **EK7** | **E26** | **EA3** | **EA1** |
| 3.0mm x 12.7mm<br>.118" x .500" | 3.0mm x 12.7mm<br>.118" x .500" | 3.1mm x 9.1mm<br>.120" x .360" | 3.1mm x 3.8mm<br>.120" x .150" | 3.1mm x 6.4mm<br>.120" x .250" |
| **E95**+ | **EK3** | **EK8** | **E90** | **EG4** |
| 3.2mm x 7.4mm<br>.125" x .292" | 3.5mm x 10.0mm<br>.138" x .394" | 3.5mm x 12.7mm<br>.138" x .394" | 3.6mm x 6.4mm<br>.140" x .250" | 3.8mm x 3.8mm<br>.150" x .150" |
| **EA5** | **E35**+ | **E43**+ | **EH1** | **EH7** |
| 4.0mm x 6.0mm<br>.156" x .236" | 4.0mm x 7.4mm<br>.156" x .292" | 4.0mm x 7.4mm<br>.156" x .292" | 4.0mm x 12.7mm<br>.157" x .500" | 4.0mm x 12.7mm<br>.157" x .500" |
| **E50**+ | **E64** | **EB1**+ | **EO4** | **EC9** |
| 4.3mm x 9.7mm<br>.170" x .380" | 4.7mm x 12.2mm<br>.185" x .480" | 4.7mm x 12.2mm<br>.185" x .480" | 4.8mm x 7.6mm<br>.189" x .300" | 5.0mm x 17.2mm<br>.197" x .675" |

D-Shape

+ Contact your sales or customer service representative for details.

6



| | | | |
|---|---|---|---|
| **EJ1** | **E10** | **EA6** | **EH5** |
| 5.5mm x 12.7mm<br>.217" x .500" | 6.4mm x 9.5mm<br>.250" x .375" | 6.4mm x 9.5mm<br>.250" x .375" | 9.53mm x 12.7mm<br>.375" x .500" |
| **E92\*** | **E56** | **EB6\*** | **E21** |
| 6.0mm x 7.4mm<br>.240" x .292" | 6.1mm x 7.4mm<br>.240" x .292" | 6.1mm x 7.5mm<br>.240" x .294" | 6.4mm x 5.9mm<br>.250" x .234" |
| **EC3** | **EH3** | **EG3** | **E98** |
| 6.4mm x 7.1mm<br>.250" x .280" | 8.0mm x 8.0mm<br>.315" x .315" | 9.8mm x 10.7mm<br>.385" x .420" | 9.8mm x 10.7mm<br>.385" x .420" |
| **E98 Riveted** | **EH9** | **E55** | **E40** |
| 9.8mm x 10.7mm<br>.385" x .420" | 9.78mm x 10.67mm<br>.385" x .420" | 9.8mm x 12.2mm<br>.385" x .480" | 10.0mm x 10.9mm<br>.395" x .430" |
| **ED8** | **E85** | **E16** | **E02** |
| 10.0mm x 10.9mm<br>.395" x .430" | 11.8mm x 10.7mm<br>.465" x .420" | 18.0mm x 14.2mm<br>.710" x .560" | 23.9mm x 14.0mm<br>.940" x .550" |
| **EC2** | **E32** | | |
| 9.0mm x 11.0mm<br>.354" x .433" | 17.1mm x 14.7mm<br>.675" x .580" | | |
| **EG5** | | | |
| 9.5mm x 12.7mm<br>.374" x .500" | | | |

*Drawings are representative of the profile.*
*Please contact your Schlegel EMI representative*
*for engineering drawings.*

**Lead times for all standard parts will be 1-3 days.**
**All other parts are dependent on inventory.**



EMI Shielding Products



SCHLEGEL
electronic materials

◆ Contact your sales or customer service representative for details.

7

# Finishing Information
## Standard Pressure-Sensitive Adhesive (PSA)

Schlegel EMI gaskets come with adhesive that is made to order. This chart contains the standard PSA widths used on gaskets in the Profile Selection Guide. Other PSA widths may be requested. The Wide Release Liner™ tape option is also available for many profiles for "pick-n-place" assembly. For information on PSA options, please contact your Schlegel EMI representative.

Self-Mounting gaskets are designed to be applied without adhesives. Adhesive mounting is an option on these profiles.

For I/O information, please call your Schlegel EMI representative.

| Part | Inches | mm | PSA WIDTH Inches [mm] | | Part | Inches | mm | PSA WIDTH Inches [mm] | |
|------|--------|-----|------|------|------|--------|-----|------|------|
| **Rectangle** | | | | | | | | | |
| E01 | .118 x .157 | 3.0 x 4.0 | .070 | [1.8] | E73 | .197 x .315 | 5.0 x 8.0 | .125 | [3.2] |
| E03 | .039 x .157 | 1.0 x 4.0 | .070 | [1.8] | E74 | .130 x .190 | 3.3 x 4.8 | .100 | [2.5] |
| E05 | .295 x .591 | 7.5 x 15.0 | .250 | [6.4] | E75 | .625 x 1.000 | 15.9 x 25.4 | .250 | [6.4] |
| E06 | .039 x .276 | 1.0 x 7.0 | .125 | [3.2] | E77 | .079 x .275 | 2.0 x 7.0 | .125 | [3.2] |
| E07 | .079 x 1.625 | 2.0 x 41.3 | .125 | [3.2] | E78 | .157 x .591 | 4.0 x 15.0 | .250 | [6.4] |
| E08 | .079 x .394 | 2.0 x 10.0 | .125 | [3.2] | E79 | .236 x .236 | 6.0 x 6.0 | .125 | [3.2] |
| E09 | .079 x 1.125 | 2.0 x 28.6 | .125 | [3.2] | E80 | .453 x .414 | 11.5 x 10.5 | .188 | [4.8] |
| E11 | .039 x .394 | 1.0 x 10.0 | .125 | [3.2] | E81 | .079 x .157 | 2.0 x 4.0 | .070 | [1.8] |
| E12 | .039 x .197 | 1.0 x 5.0 | .100 | [2.5] | E83 | .020 x .157 | 0.5 x 4.0 | .070 | [1.8] |
| E14 | .200 x .200 | 5.1 x 5.1 | .100 | [2.5] | E84 | .375 x .787 | 9.5 x 20.0 | .250 | [6.4] |
| E18 | .118 x .118 | 3.0 x 3.0 | .070 | [1.8] | E88 | .020 x .276 | 0.5 x 7.0 | .125 | [3.2] |
| E20 | .375 x 1.000 | 9.5 x 25.4 | .500 | [12.7] | E91 | .020 x .394 | 0.5 x 10.0 | .125 | [3.2] |
| E24 | .079 x .500 | 2.0 x 12.7 | .250 | [6.4] | E97 | .049 x .315 | 1.2 x 8.0 | .070 | [1.8] |
| E25 | .250 x .500 | 6.4 x 12.7 | .250 | [6.4] | E99 | .039 x .512 | 1.0 x 13.0 | .250 | [6.4] |
| E28 | .125 x .500 | 3.2 x 12.7 | .250 | [6.4] | EA8 | .059 x 1.06 | 1.5 x 27.0 | .250 | [6.4] |
| E29 | .039 x 1.000 | 1.0 x 25.4 | .250 | [6.4] | EB4 | .157 x .157 | 4.0 x 4.0 | .070 | [1.8] |
| E30 | .079 x 2.362 | 2.0 x 60.0 | none | | EB5 | .059 x .551 | 1.5 x 14.0 | .250 | [6.4] |
| E36 | .984 x .787 | 25.0 x 20.0 | .313 | [8.0] | EC5 | .039 x 1.627 | 1.0 x 41.3 | | |
| E37 | .039 x .118 | 1.0 x 3.0 | .070 | [1.8] | EC6 | .120 x 1.610 | 3.0 x 40.9 | .100 | [2.5] |
| E39 | .039 x .710 | 1.0 x 18.0 | .125 | [3.2] | EC7 | .079 x .295 | 2.0 x 7.5 | .125 | [3.2] |
| E44 | .118 x 1.000 | 3.0 x 25.4 | .250 | [6.4] | ED3 | .079 x .689 | 2.0 x 17.5 | .250 | [6.4] |
| E47 | .180 x 1.625 | 4.6 x 41.3 | .250 | [6.4] | ED5 | .118 x 1.693 | 3.0 x 43.0 | .070 | [1.8] |
| E49 | .669 x .669 | 17.0 x 17.0 | .312 | [7.9] | ED9 | .060 x .197 | 1.5 x 5.0 | .100 | [2.5] |
| E58 | .079 x .827 | 2.0 x 21.0 | .125 | [3.2] | EG2 | .060 x .390 | 1.5 x 10.0 | .125 | [3.2] |
| E59 | .020 x .197 | .5 x 5.0 | .100 | [2.5] | EG7 | .079 x .750 | 2.0 x 19.0 | .070 | [1.8] |
| E61 | .059 x .275 | 1.5 x 7.0 | .125 | [3.2] | EG8 | .315 x .315 | 8.0 x 8.0 | .125 | [3.2] |
| E62 | .125 x .375 | 3.2 x 9.5 | .188 | [4.8] | EG9 | .250 x 1.625 | 6.4 x 41.3 | .250 | [6.4] |
| E63 | .375 x .375 | 9.5 x 9.5 | .188 | [4.8] | EH4 | .079 x .866 | 2.0 x 22.0 | .250 | [6.4] |
| E65 | .146 x .827 | 3.7 x 21.0 | .125 | [3.2] | EJ4 | .236 x .315 | 6.0 x 8.0 | .125 | [3.2] |
| E66 | .250 x .375 | 6.4 x 9.5 | .188 | [4.8] | EJ6 | .039 x .591 | 1.0 x 15.0 | .250 | [6.4] |
| E68 | .375 x .500 | 9.5 x 12.7 | .250 | [6.4] | EJ7 | .200 x .350 | 5.0 x 9.0 | .125 | [3.2] |
| E70 | .125 x .250 | 3.2 x 6.4 | .125 | [3.2] | | | | | |
| **C-Fold** | | | | | | | | | |
| E02 | .940 x .550 | 23.9 x 14.0 | .250 | [6.4] | E98 | .385 x .420 | 9.8 x 10.7 | .188 | [4.8] |
| E16 | .710 x .560 | 18.0 x 14.2 | .250 | [6.4] | E98-Rivet | .385 x .420 | 9.8 x 10.7 | rivet | |
| E21 | .250 x .234 | 6.4 x 5.9 | .100 | [2.5] | EB6 | .240 x .294 | 6.1 x 7.5 | self-mounting | |
| E32 | .675 x .580 | 17.1 x 14.7 | .250 | [6.4] | EC3 | .250 x .280 | 6.4 x 7.1 | .250 | [6.4] |
| E40 | .395 x .430 | 10.0 x 10.9 | .188 | [4.8] | ED8 | .448 x .630 | 11.4 x 16.0 | .250 | [6.4] |
| E55 | .385 x .480 | 9.8 x 12.2 | self-mounting | | EG3 | .385 x .420 | 9.8 x 10.7 | .188 | [4.8] |
| E56 | .240 x .292 | 6.1 x 7.4 | self-mounting | | EH3 | .315 x .315 | 8.0 x 8.0 | .125 | [3.2] |
| E85 | .465 x .420 | 11.8 x 10.7 | .188 | [4.8] | EH9 | .385 x .420 | 9.8 x 10.7 | .188 | [4.8] |
| E92 | .240 x .292 | 6.0 x 7.4 | self-mounting | | | | | | |

|  |  |  | PSA WIDTH |  |  |  | PSA WIDTH |
|---|---|---|---|---|---|---|---|
| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |

### D-Shape

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E04 | .189 x .300 | 4.8 x 7.6 | .125 [3.2] | ED7 | .080 x .500 | 2.3 x 12.7 | .125 [3.2] |
| E10 | .250 x .375 | 6.4 x 9.5 | .188 [4.8] | EG4 | .150 x .150 | 3.8 x 3.8 | .070 [1.8] |
| E17 | .060 x .150 | 1.5 x 3.8 | .070 [1.8] | EG6 | .070 x .180 | 1.8 x 4.6 | .100 [2.5] |
| E26 | .120 x .360 | 3.1 x 9.1 | .188 [4.8] | EH1 | .157 x .500 | 4.0 x 12.7 | .100 [2.5] |
| E35 | .156 x .292 | 4.0 x 7.4 | self-mounting | EH2 | .080 x .675 | 2.0 x 17.2 | .160 [4.1] |
| E43 | .156 x .292 | 4.0 x 7.4 | self-mounting | EH5 | .375 x .500 | 9.5 x 12.7 | .250 [6.4] |
| E45 | .090 x .155 | 2.3 x 3.9 | .070 [1.8] | EH7 | .157 x .500 | 4.0 x 12.7 | .100 [2.5] |
| E50 | .170 x .380 | 4.3 x 9.7 | .188 [4.8] | EJ1 | .217 x .500 | 5.5 x 12.7 | .100 [2.5] |
| E51 | .080 x .675 | 2.0 x 17.1 | .160 [4.1] | EJ5 | .118 x .500 | 3.0 x 12.7 | .100 [2.5] |
| E57 | .090 x .090 | 2.3 x 2.3 | .080 [2.0] | EJ8 | .070 x .394 | 1.8 x 10.0 | .100 [2.5] |
| E64 | .185 x .480 | 4.7 x 12.2 | self-mounting | EJ9 | .079 x .394 | 2.0 x 10.0 | .100 [2.5] |
| E87 | .110 x .380 | 2.8 x 9.7 | .188 [4.8] | EK1 | .098 x .394 | 2.5 x 10.0 | .100 [2.5] |
| E90 | .140 x .250 | 3.6 x 6.4 | .125 [3.2] | EK2 | .118 x .394 | 3.0 x 10.0 | .100 [2.5] |
| E95 | .125 x .292 | 3.2 x 7.4 | self-mounting | EK3 | .138 x .394 | 3.5 x 10.0 | .100 [2.5] |
| EA1 | .120 x .250 | 3.1 x 6.4 | .125 [3.2] | EK4 | .070 x .500 | 1.8 x 12.7 | .100 [2.5] |
| EA3 | .120 x .150 | 3.1 x 3.8 | .070 [1.8] | EK5 | .079 x .500 | 2.0 x 12.7 | .100 [2.5] |
| EA5 | .156 x .236 | 4.0 x 6.0 | .125 [3.2] | EK6 | .098 x .500 | 2.5 x 12.7 | .100 [2.5] |
| EA6 | .250 x .375 | 6.4 x 9.5 | .188 [4.8] | EK7 | .118 x .500 | 3.0 x 12.7 | .100 [2.5] |
| EB1 | .185 x .480 | 4.7 x 12.2 | self-mounting | EK8 | .138 x .500 | 3.5 x 12.7 | .100 [2.5] |
| EC9 | .197 x .675 | 5.0 x 17.2 | .160 [4.1] | | | | |

### T-Shape

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E41 | .200 x .190 | 5.1 x 4.8 | tape optional | ED4 | .152 x .235 | 3.9 x 6.0 | .100 [2.5] |
| E53 | .300 x .270 | 7.6 x 6.9 | tape optional | EH8 | .390 x .400 | 9.9 x 10.2 | .188 [4.8] |
| EA9 | .157 x .244 | 4.0 x 6.2 | .125 [3.2] | EJ2 | .177 x .244 | 4.5 x 6.2 | .100 [2.5] |
| ED1 | .157 x .244 | 4.0 x 6.2 | .125 [3.2] | | | | |

### L-Shape / Knife Edge

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E13 | .217 x .472 | 5.5 x 12.0 | .188 [4.8] | E19 | .250 x .750 | 6.4 x 19.1 | .250 [6.4] |
| E48 | .312 x .731 | 7.9 x 18.6 | .250 [6.4] | E31 | .106 x .445 | 2.7 x 11.3 | .250 [6.4] |
| EA2 | .150 x .400 | 3.8 x 10.2 | .250 [6.4] | E67 | .106 x .445 | 2.7 x 11.3 | .250 [6.4] |
| EB8 | .551 x .591 | 14.0 x 15.0 | .160 [4.1] | E96 | .106 x .315 | 2.7 x 8.0 | .100 [2.5] |
| ED2 | .197 x .335 | 5.0 x 8.5 | .160 [4.1] | EH6 | .050 x .445 | 1.27 x 11.3 | .250 [6.4] |

### P-Shape / Self-Mounting

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E60 | .130 x .520 | 3.3 x 13.2 | .250 [6.4] | E27 | .638 x .230 | 16.2 x 5.8 | self-mounting |
| EA7 | .448 x .630 | 11.4 x 16.0 | .312 [7.9] | E86 | .740 x .380 | 18.8 x 9.7 | self-mounting |

### (unlabeled) / U-Shape

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E69 | .98 dia | 2.5 dia | none | EC2 | .354 x .157 | 9.0 x 11.0 | .125 [3.2] |
| EA4 | .98 dia | 2.5 dia | none | EG5 | .374 x .500 | 9.5 x 12.7 | .250 [6.4] |

### Mini Clip / Wedge

| Part | Inches | mm | Inches [mm] | Part | Inches | mm | Inches [mm] |
|---|---|---|---|---|---|---|---|
| E93 | .100 x .330 | 2.5 x 8.4 | self-mounting | E52 | .157 x .324 | 4.0 x 8.2 | .125 [3.2] |
| EB9 | .145 x .256 | 3.7 x 6.5 | self-mounting | | | | |

### Environmental Seal

| Part | Inches | mm | Inches [mm] |
|---|---|---|---|
| E34 | .681 x .402 | 17.3 x 10.2 | .250 [6.4] |

## ASIA

### Schlegel Electronic Materials (Far East) Limited

Unit 3, 3/F, Block A, New Trade Plaza,
6 On Ping Street, Shatin, N.T., Hong Kong.
Tel No: +852-2686 9872
Fax No: +852-2686 9728

### Schlegel Electronic Materials (Dongguan) Limited

No. 18 Qiaoxin Road, Qiaoxin Industrial Park,
Qiaotou, Dongguan, Guangdong, P.R. China
Postal Code: 523520
Tel No: +86-769-8356 5686
Fax No: +86-769-8334 5656

### Schlegel Electronic Materials (Dongguan) Limited - Shanghai Office

East, 3/F, No.4 Unit, 56 Meisheng Road,
Waigaoqiao P.T.Z., Pudong, Shanghai
Postal Code: 200131
Tel No: +86-21-5868 3383
Fax No: +86-21-5868 3386

### Schlegel Electronic Materials (Dongguan) Limited - Chengdu Office

Unit 11-12, 14/F, GuoMao Plaza,
No.6 ShiHui Road, Cheng Du
Postal Code: 610031
Tel No: +86-28-8739-0009
Fax No: +86-28-8771-9117

## NORTH AMERICA

### Schlegel Electronic Materials, Inc.

1555, Jefferson Road
P.O. Box: 20310, Rochester, NY 14692
Tel No: +1 585-295-2030
Fax No: +1 585-427-7216

## EUROPE

### Schlegel Electronic Materials, bvba

Rochesterlaan 4, b-8470 Gistel, Belgium
Tel No: +32 59 560 270
Fax No: +32 59 560 271

EMI Shielding Products

 

www.schlegelemi.com

© Schlegel Electronic Materials, Inc.

EXHIBIT I

**Lennon, Jim**

| | |
|---|---|
| **From:** | Lennon, Jim |
| **Sent:** | Tuesday, April 22, 2008 4:21 PM |
| **To:** | 'Steve Nash' |
| **Subject:** | RE: Status - Parker v. Schlegel |
| **Attachments:** | Ltr to J Lennon re further settlement discussions 4.10.2008.pdf; Draft License & Settlement agreement.doc |

Steve,

In your letter of April 10th you proposed (and we consented to)  "grant[ing] to one another paid-up cross-licenses under the patents-in-suit covering all past, present and future marketed products."

The language of your draft license and settlement does not appear to reflect this point.  Am I missing something?  Did you intend to cover this point with the mutual release?  If so, the language of the mutual release needs to extended beyond claims that could have been brought up to the Effective Date of the agreement.

You also left out U.S. Patent No. 6,248,393 from Schedule 1.

Please confirm that these were unintentional errors before we proceed with our review and edits.

Thanks,
Jim

---

**From:** Steve Nash [mailto:SNash@cblh.com]
**Sent:** Tuesday, April 22, 2008 3:08 PM
**To:** Lennon, Jim
**Cc:** Frank DiGiovanni
**Subject:** RE: Status - Parker v. Schlegel

Jim,

Attached is the proposed license and settlement agreement for review and comment.  Please let me know your thoughts.

I look forward to hearing from you.

Regards,
Steve

---

**From:** Lennon, Jim [mailto:JLennon@wcsr.com]
**Sent:** Tuesday, April 22, 2008 12:26 PM
**To:** Steve Nash
**Subject:** Status - Parker v. Schlegel

Steve,

When can we expect a draft document from Parker?

Thanks,
Jim

---

**IRS CIRCULAR 230 NOTICE:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice

5/21/2008

Case 1:07-cv-00266-MPT    Document 38-10    Filed 05/28/2008    Page 3 of 3

contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**CONFIDENTIALITY NOTICE:** This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

**This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.**

5/21/2008

EXHIBIT J

**Lennon, Jim**

| | |
|---|---|
| **From:** | Steve Nash [SNash@cblh.com] |
| **Sent:** | Wednesday, April 23, 2008 10:20 AM |
| **To:** | Lennon, Jim |
| **Cc:** | Frank DiGiovanni |
| **Subject:** | RE: Status - Parker v. Schlegel |

Jim,

Thanks for your email.  When we spoke prior to my April 10 letter I came away with the understanding that Schlegel's chief concern related to being sued again if it made modifications to its products.  We drafted the proposed agreement to cover such products and alleviate that concern.

To the extent Schlegel is uncomfortable with the current draft, please let me know what language Schlegel would prefer, or make revisions in the agreement.  You may also add any additional Schlegel products to be covered.

You are correct that '393 should be added to the schedule.

I am out of the office at CLE today, but am available all day tomorrow if you would like to discuss.  I look forward to hearing from you.

Regards,
Steve


Sent by GoodLink (www.good.com)


-----Original Message-----
From:   Lennon, Jim [mailto:JLennon@wcsr.com]
Sent:   Tuesday, April 22, 2008 04:21 PM Eastern Standard Time
To:     Steve Nash
Subject:        RE: Status - Parker v. Schlegel

Steve,

In your letter of April 10th you proposed (and we consented to)  "grant[ing] to one another paid-up cross-licenses under the patents-in-suit covering all past, present and future marketed products."

The language of your draft license and settlement does not appear to reflect this point.  Am I missing something?  Did you intend to cover this point with the mutual release?  If so, the language of the mutual release needs to extended beyond claims that could have been brought up to the Effective Date of the agreement.

You also left out U.S. Patent No. 6,248,393 from Schedule 1.

Please confirm that these were unintentional errors before we proceed with our review and edits.

Thanks,
Jim

_____

From: Steve Nash [mailto:SNash@cblh.com]
Sent: Tuesday, April 22, 2008 3:08 PM
To: Lennon, Jim
Cc: Frank DiGiovanni
Subject: RE: Status - Parker v. Schlegel


Jim,

Attached is the proposed license and settlement agreement for review and comment.  Please let me know your thoughts.

I look forward to hearing from you.

Regards,
Steve

_____

From: Lennon, Jim [mailto:JLennon@wcsr.com]
Sent: Tuesday, April 22, 2008 12:26 PM
To: Steve Nash
Subject: Status - Parker v. Schlegel

Steve,

When can we expect a draft document from Parker?

Thanks,
Jim

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

CONFIDENTIALITY NOTICE: This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

**This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.**

5/21/2008

# EXHIBIT K

## LICENSE, ~~AND~~ SETTLEMENT AGREEMENT AND RELEASE

THIS LICENSE, ~~AND~~ SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into as of the _____ day of March, 2008 ("the Effective Date"), by and between Parker-Hannifin Corporation, a corporation of the State of Ohio, U.S.A. having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, U.S.A. (jointly and severally with its parents, subsidiaries, related companies, affiliates, and ventures under its control or under which it is controlled including its subsidiary, Parker Intangibles, LLC, also having an address at 6035 Parkland Boulevard, Cleveland, OH 44124, "Parker"), and Schlegel Electronic Materials, Inc, a~~(n)~~ Delaware ~~_____~~ corporation having an address at 806 Linden Avenue Suite 100, Rochester, NY 14602-0310 ~~_____~~ (jointly and severally with its parents and subsidiaries, and its related companies, affiliates, and ventures under its control or under which it is controlled  "Schlegel").

WHEREAS, Parker ~~is the recorded~~ own~~ser of~~ of a family of patents directed to flame retardant fabric-over-foam electromagnetic interference (EMI) shielding gaskets and a direct wet coating process such as knife-over-roll or slot die for manufacturing flame-retardant shielding fabric for such gaskets and Schlegel owns a family of patents related to EMI gaskets;

WHEREAS, Parker ~~presently has filed suit against~~has sued Schlegel in the U.S. District Court for the District of Delaware (the "Court"), Civil Action No. C.A. No. 1:07-cv-266 (the "Action"), alleging that certain products marketed by Schlegel infringe the claims of ~~one or more of the patents within such family of~~ certain Parker patents;

WHEREAS, Schlegel has ~~filed a~~ counterclaim~~ed~~ against Parker in the Action alleging that certain products marketed by Parker infringe the claims of certain Schlegel patents;

WHEREAS, Parker and Schlegel (jointly, the "parties") have agreed to settle the Action on the terms set forth in this Agreement, including the mutual releases, and the attached Consent Judgment; and

WHEREAS, the parties acknowledge and agree that the Court has jurisdiction over the subject matter of the Action and over each of the parties to this Agreement, and that the Court shall retain jurisdiction for the purposes of implementing and enforcing this Agreement.

NOW, THEREFORE, the parties hereby agree to resolve the present dispute between them as follows:

## ARTICLE I
## DEFINITIONS

As used herein, the following terms when written with initial capital letters shall have the meanings set forth hereinafter unless the context requires otherwise:

1.1    Licensed Parker Patents. The patents listed in Schedule 1 hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.2　　<u>Licensed Schlegel Products</u>.　The products of the type identified in <u>Schedule 2</u> hereto, and any modifications or improvements thereof.

1.3　　<u>Licensed Schlegel Patents</u>. The patents listed in <u>Schedule 3</u> hereto, and any reissues, reexaminations, renewals, substitutes, and extensions thereof.

1.4　　<u>Licensed Parker Products</u>.　The products of the type identified in <u>Schedule 4</u> hereto, any modifications or improvements thereof.

1.5　　<u>Confidential Information</u>.　Any and all technical, commercial, business, financial or other confidential and/or proprietary information, and all media containing any of the foregoing, including copies or duplicates thereof, disclosed either directly or indirectly at any time before or during the Term of this Agreement by Schlegel to Parker ("Schlegel Confidential Information"), or by Parker to Schlegel ("Parker Confidential Information").

## ARTICLE II
## NON-EXCLUSIVE LICENSES

2.1　　<u>Grant to Schlegel</u>.　Parker grants to Schlegel, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Parker Patents for Schlegel to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Schlegel Products during the Term of this Agreement.

2.2　　<u>Grant to Parker</u>.　Schlegel grants to Parker, subject to the terms and conditions of this Agreement, a non-exclusive, personal, paid-up, non-transferable and indivisible license under the Licensed Schlegel Patents for Parker to make, have made, use, sell, offer for sale, import, and otherwise dispose of the Licensed Parker Products during the Term of this Agreement.

2.3　　<u>No-Sublicenses</u>. Each of the non-exclusive licenses herein granted shall be indivisible, non-transferable, and without the right to grant sublicenses <u>except to customers including an OEM or other purchaser</u>, or to subcontract <u>all or a portion of </u>the manufacture of or otherwise have made the Licensed Parker or Schlegel Products as the case may be, without the prior, written consent of the granting party.

2.4　　<u>Infringements</u>. Each party ~~shall~~ <u>may </u>promptly advise the other party by written notice of all relevant facts pertaining to any known, suspected, or threatened infringement by any third party of the patents licensed to it hereunder.　The party granting the license hereunder ~~shall~~ have the exclusive right, but not the obligation, to bring suit against any such infringement or alleged infringement, it being understood that all matters relating to the enforcement of the patents licensed hereunder by suit or otherwise are to be determined and/or undertaken in the sole and complete discretion of the granting party. Should the granting party institute suit against any infringement or alleged infringement of the patents licensed hereunder, the other party<u>,</u> at the expense of the granting party, shall: ~~(i)~~ cooperate in ~~all respects~~<u>such enforcement</u> and, to the extent <u>reasonably </u>possible,

have its employees testify when requested and make available relevant non-privileged records, papers, information, samples specimens and the like under suitable protective orders; and (ii) agree to be named as a nominal party in such suit.

## ARTICLE III
## TERM AND TERMINATION

3.1    Term.  The term of each of the licenses herein granted shall commence as of the Effective Date, and shall continue as to each such license, along with the rights and obligations of each of the parties hereunder, unless earlier terminated in accordance with the terms and conditions hereof, until the expiration of the last to expire patent included in such license (the "Term").

3.2    Termination.

(a)    Each of the licenses herein granted may be terminated at any time during the Term:

(i)    By the licensor party of such licensee upon written notice to the licensee party of such license by reason of any material default or breach of this Agreement, provided that the defaulting licensee party shall have received prior written notice of the specific default or breach and shall have failed to cure the default within ninety (90) days after a notice has been sent by the licensor party to the defaulting licensee party; or

(ii)    By either party with This Agreement may be terminated only upon the written consent of the other party.

(b)    Any termination of this Agreement on account of a material breach of default hereof shall not be an exclusive remedy for such default or breach, but shall be in addition to any legal or equitable relief available to the either party as a result of such default or breach by the other party.

3.3    Continued Liability.  Except as is stated in the mutual release set forth herein neither the termination, expiration, nor non-renewal of this Agreement shall release Schlegel or Parker from any obligations to the other arising under this Agreement that have been incurred prior to any such termination, expiration, or non-renewal.

## ARTICLE IV
## DISCLAIMERS AND LIMITATION OF LIABILITY

(a)    EACH PARTY IS SOLELY RESPONSIBLE FOR ITS ACTIVITIES CARRIED OUT UNDER THE LICENSE GRANTED HEREUNDER TO IT, AND THE OTHER PARTY MAKES NO REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, RELATING TO THE PATENT LICENSED HEREUNDER, OR THE PRODUCTS LICENSED HEREUNDER, OR TO THE OTHER PARTY'S PRACTICE,

MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF. RATHER, EACH PARTY EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO WARRANTIES OF TITLE, NONINFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, AND WHETHER EXPRESS, IMPLIED, OR ARISING BY OPERATION OF LAW, TRADE USAGE OR COURSE OF DEALING, PERTAINING OR RELATING TO THE PATENTS AND/OR PRODUCTS LICENSED HEREUNDER, OR TO THE PRACTICE, MANUFACTURE, USE, IMPORTATION, OFFER FOR SALE, OR SALE THEREOF.

(b)     Nothing in this Agreement shall be construed, whether expressly or by implication, estoppel, or otherwise, as: (i) a warranty or representation by either party as to the utility, validity or enforceability of the patents licensed hereunder, and each party understands and agrees that the other party does not warrant the utility, validity or enforceability thereof; or (ii) a requirement that either party file any patent application, or secure or maintain any patent including the patents licensed hereunder; or (iii) a warranty or representation by either party as to other party's freedom from infringement, misappropriation, or other violation, or from any allegations of the same, of any third party patents, trade or service marks, mask works, domain names, tradenames, trade dress, trade secrets, confidential or proprietary information, copyrights, or other intellectual property or proprietary rights, and neither party shall indemnify, defend, or otherwise hold the other party harmless against any such infringement, misappropriation, or other violation, or any such allegations of the same; or (iv) a warranty or representation by either party as to the other party's freedom from third party infringers or alleged infringers of the patents licensed hereunder, and neither party shall be under any obligation to enforce the patents licensed hereunder or any of its patents or other intellectual property or proprietary rights against any such infringers or alleged infringers of the patents licensed hereunder; or (v) conferring upon either party any right to use in advertising, publicity, or the like any name, tradename, or trademark of the other party, and neither party shall use any of the same; or (vi) granting to either party by implication, estoppel, or otherwise any licenses or rights under any patents or patent applications of the other party other than those licensed hereunder or released hereunder, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, design, mask work, or other intellectual property or proprietary right or product of the other party, and each party understands and agrees that there is no express, implied, or other license to it under any patent or application for patent of the other party other than the patents licensed hereunder, or under any trade or service mark, domain name, tradename, trade dress, trade secret, confidential or proprietary information, copyright, mask work, design, or other intellectual property or proprietary right or product of the other party, other than the patents or other rights licensed or released hereunder; or (vii) an obligation by either party to furnish know-how or any other technical, commercial, business, or other information or technology to the other party expect as otherwise expressly stated herein.

(c)     IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES OF ANY KIND

OR NATURE WHATSOEVER, INCLUDING BUT NOT LIMITED TO LOST PROFITS ARISING FROM OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OR RELATING TO THE LICENSED PATENTS OR LICENSEE'S USE THEREOF, OR TO THE LICENSED PRODUCTS OR LICENSEE'S MANUFACTURE, USE, OFFER FOR SALE, OR SALE THEREOF, WHETHER ALLEGED TO ARISE FROM PERSONAL INJURY, PROPERTY DAMAGE, SHUTDOWN OR NON-OPERATION OF ANY FACILITY, OR ANY OTHER CAUSE, OR UNDER ANY THEORY OF LIABILITY, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, PATENT INFRINGEMENT OR OTHERWISE, AND REGARDLESS OF WHETHER EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

## ~~ARTICLE V~~
## ~~INDEMNIFICATION~~

~~(a)    Each party (the "indemnifying party") shall defend and hold the other party (the "indemnified party"), its successors and assigns and their officers, employees and agents harmless from, against, for and in respect of any and all losses, liabilities, demands, damages, costs and expenses, including reasonable attorney's fees, arising out of any claim, allegation, threat, suit, action, or proceeding, and any award or settlement thereof, for bodily injury, death, or property damage, or any other injury or damage of any kind whatsoever, including for product liability, infringement, misappropriation or other violation of any patent or any registration or application therefor, or of any under any trade or service mark, domain name, trade name, trade dress, trade secret, confidential or proprietary information, copyright, or other intellectual property or proprietary right, breach of contract, or warranty, if and to the extent such injury or damage is caused by, relates to, or arises out of: (i) the willful, reckless, or negligent act or omission of the indemnifying party in the performance of its obligations hereunder; (ii) the material breach or default by indemnifying party under the terms of this Agreement; (iii) the indemnifying party's use of the patents licensed hereunder or its practicing thereunder or under the license herein granted; or (iv) the indemnifying party manufacture, use, offer for sale, supply, sourcing, specification, or design of the products licensed hereunder, or its failure to comply with any laws, ordinances, or regulations relating thereto.~~

~~(b)    The indemnifying party's liability under this Article is contingent upon: (i) the indemnified party notifying the indemnifying party promptly of the claim, allegation, threat, suit, action, or proceeding; (ii) indemnifying party having the exclusive right to control and direct the investigation, preparation, defense and settlement thereof; and (iii) the indemnified party's reasonable cooperation at indemnifying party's expense, provided, however, that the failure by the indemnified party to promptly give the indemnifying party notice shall affect the indemnifying party's obligation to indemnify only to the extent that the rights of the indemnifying party are materially prejudiced by such failure, and further provided that the indemnified party may participate, at its own expense, in such defense and in any settlement discussions directly or through counsel of its choice.~~

# ARTICLE VI
## MISCELLANEOUS

56.1       Disputes.  The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between representatives who have authority to settle the controversy. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

65.2       Notices.

(a)     All notices, requests and other communications hereunder shall be in a writing delivered by hand, overnight service with receipt signature requested electronic transmission, or certified mail, postage prepaid, return receipt requested, and shall be deemed to have been duly given at the time of receipt as evidenced by the dated written or electronic return receipt of the receiving party.

(b)     All correspondence shall be sent or dispatched as follows:

| | |
|---|---|
| If to Parker: | Parker Chomerics Division |
| | 77 Dragon Court |
| | Woburn, Massachusetts 01888 |
| | Attention: Controller |
| | |
| With a copy to: | Parker-Hannifin Corporation |
| | 6035 Parkland Boulevard |
| | Cleveland, Ohio 44124-4141 |
| | Attention: Secretary |
| | |
| If to Schlegel: | Schlegel Electronic Materials, Inc. |
| | 806 Linden Avenue |
| | Suite 100 |
| | PO Box 20310 |
| | Rochester, NY 14602-0310 |
| | |
| | Attention: Chief Financial Officer |

provided, however, if either party shall have designated a different address by written notice given as provided above and received by the other party, then to the last address so designated.

65.3   Independent Contractors.  The relationship between Schlegel and Parker shall at all times be that of independent contracting parties. Neither party shall in any manner represent

that it or its employees or agents are employees or agents of the other party, and nothing contained in this Agreement shall be construed as authorizing either party to create or assume any obligation or liability in the name of the other party or subject the other party to any obligation or liability. This Agreement shall not constitute, create, give effect to or otherwise imply a joint venture, pooling arrangement, partnership or formal business organization of any kind. Nothing herein shall be construed as providing for the sharing of profit or losses arising out of the efforts of either or both parties.

6̶5.4    <u>Entire Agreement</u>.  This a̶Agreement states the entire agreement between Schlegel and Parker with respect to the subject matter herein involved, and supersedes all proposals, communications or agreements, whether oral or written..

6̶5.5    <u>Governing Law</u>. This Agreement shall be construed by and interpreted in accordance with the laws of the United States and the State of Delaware, without regard to its or any other conflict of law provisions or principles.  All questions concerning the construction or effect of patent applications and patents shall be decided in accordance with the laws of the country in which the particular patent application or patent concerned has been filed or granted, as the case may be. The parties specifically elect to not be bound in any way by the United Nations Convention on Contracts for the International Sale of Goods.

6̶.5̲.6    <u>Waiver</u>.

(a)    No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless made in writing and signed by the duly authorized corporate officers of Schlegel and Parker.

(b)    No written waiver, alteration, or modification made in accordance with the provisions hereof shall have effect unless it expressly references this Agreement.

(c)    The failure of either party to enforce, at any time, any of the provisions of this Agreement, or any rights in respect thereof, or to exercise any election herein provided, shall not be considered to be a waiver to enforce such provisions, rights, or elections, or in any way to affect the validity of this Agreement.

6̶5.7    <u>Invalidity</u>. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the other terms and provisions, and such invalid or unenforceable term or provision shall, in all events, be construed and enforced to the fullest extent permissible under law.

6̶5.8    <u>Benefit</u>.  This Agreement shall be binding upon and inure to the benefit of successors and permitted assignees of the parties.

6̶5.9    <u>Authority</u>.  The parties hereto represent that each has full power and authority to enter into and perform the obligations of this Agreement, and are aware of no contract, agreement, promise, or undertaking that would prevent the full execution and performance of this Agreement.

21Apr08

6~~5~~.10    Secrecy.  The parties hereto agree not to disclose information concerning this Agreement without the prior written consent of the other party except to the extent such disclosure is required to permit ~~ether~~ either party to comply with applicable laws or governmental regulations, or to the extent such disclosure is made under conditions of confidentiality: (i) to a tax, financial, legal, or other advisor of the party; or (ii) in connection with the sale of all or substantially all of a party's business to which this Agreement pertains; or (iii) otherwise in the conduct of either party's business in which event disclosure shall be allowed only after consultation with the other party.  This secrecy provision shall not prohibit the parties from issuing a joint press release discussing this Agreement, provided that such release shall have been approved in writing by both parties, or from informing a customer, supplier, or other third party in connection with a commercial program pertaining to the products licensed hereunder that any dispute between the parties which pertains to the patents or products licensed hereunder has been satisfactorily resolved and/or that the party has received a license from the other party, or from disclosing and using relevant information in any proceeding between the parties including one in which one of the parties hereto alleges a breach or a violation of this Agreement by the other party and/or seeks enforcement of this Agreement against the other party.

6~~5~~.11    Assignment.  This Agreement may not be assigned or transferred by either party without the prior written consent of the other party, except that either party may assign or transfer this Agreement to a successor in interest in the event of a merger or consolidation, or a transfer or sale of all or substantially all the assets of that party to which this Agreement relates.

~~6~~~~5.12~~   ~~Force Majeure.   The default by either party under any term or provision of this Agreement on its respective part to be observed and performed shall be excused in the event, to the extent, and only during the period that the same arises from or is incident to unforeseen causes beyond the control of the excused party and not resulting from its fault or negligence, including, but not limited to, acts of a public enemy, government, or nature, strikes and lockouts, priorities, allocations, and unavailability of materials at reasonable cost.   The non-performing party, however, shall be diligent in attempting to remove any such cause and shall promptly notify the other party of its extent and probable duration.   If the nonperforming party who has delayed performance or not performed on account of circumstances beyond its control is unable to remove the causes within thirty (30) days, the other party shall have the right to terminate, without penalty, this entire Agreement or any portion of it.~~

6~~5~~.~~13~~12           Registration.  It is understood that the license granted hereunder in some instances may be subject to registration and/or approval by local governmental authorities.  The party being granted the license hereunder shall be responsible for procuring any such registration and/or approval as to such license.  The parties agree to accommodate, if possible, changes necessitated by the action of such authorities for such registration and/or approval.

65.~~14~~13    Survival.  All of the representations and warranties of either party made in this Agreement, and any and all terms and provisions hereof intended to be observed and performed by either party after the expiration or termination hereof, shall survive such expiration or termination, and shall continue thereafter in full force and effect.

65.~~15~~14    Counterparts. This Agreement may be executed in one or more matching counterparts, each of which shall be deemed an original and all of which taken together shall be constitute a single agreement.

65.~~16~~15    Representation.  The parties are both represented by counsel and have participated jointly in the negotiation and drafting of this Agreement.  In the event that an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if jointly drafted by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any prevision of this Agreement.

65.~~17~~16    No Challenge.  Except as may be ordered by a court of competent jurisdiction during the Term of Agreement, each party shall not, either directly or indirectly, such as by or through any third party, or by assisting any third party: (a) assert as a claim, count, or defense in any dispute, arbitration, action, or other proceedings against the party, or any successor in interest thereof, that any of the patents licensed to it hereunder is invalid and/or unenforceable; or (b) file any opposition, interference, reexamination, nullity, or other proceeding or action against any such patent, or otherwise challenge or contest the patentability, ownership, validity or enforceability thereof, or seek a compulsory license thereunder.

65.~~18~~17    Disclaimer.  During the Term of Agreement, under no circumstances shall either party be liable to the other party by reason of the termination, expiration, or non-renewal of this Agreement for compensation, reimbursement, or damages for: (a) loss of prospective compensation; (b) goodwill or the loss thereof; or (c) expenditures, investments, leases, or any type of commitment made in connection with the business of such other party or in reliance on the existence of this Agreement.

65.~~19~~18    Mutual Release.

(a)    Subject to the terms of this Agreement and each party's compliance with the provisions thereof, each of the parties (the "releasing party") forever releases and discharges the other party, and its officers, shareholders, directors, agents, employees, licensees, distributors, agents, suppliers, vendees, transferees, customers, including any OEM~~'s~~ and other purchasers, and end-users, and permitted successors and assigns, in their capacity as such (jointly and severally, the "released party") from any and all claims, demands, losses, causes of action, damages, and liabilities (collectively "Claims"), whether at law or in equity, ~~arising up to and including the Effective Date,~~ with respect to any of the claims of any of the Licensed Parker Patents or Licensed Schlegel Patents, ~~which are based on~~ including either party's ~~past, present, and~~ or future manufacture, use, sale, offer for sale, or importation of ~~the~~ any ~~products licensed hereunder~~ past or any future

product or process, and from any and all claims or counterclaims, whether at law or in equity, which the released or releasing party has raised or could have raised in connection with the Claims of the other party.

(b)    In the event that the released party does not fully comply with each of the provisions herein, the release and discharge hereby given by the releasing party shall be null and void; provided that in no event shall ~~Schlegel~~ either party be required to pay any additional royalty or other damages for those Licensed ~~Schlegel~~ Products as to which the ~~Schlegel~~ that party has fulfilled its payment obligations to ~~Parker~~ the other party under the terms of this Agreement.

~~6~~5.~~20~~19    Consent Judgment.  Upon execution of this Agreement, the parties shall cause their attorneys to jointly petition the Court for approval of the Consent Judgment in the form attached as Exhibit A hereto.

*[Signature Page Follows This Page]*

IN WITNESS WHEREOF, each of the Parties hereto have caused this Agreement to be executed in duplicate counterparts by its duly authorized representative.

PARKER HANNIFIN CORPORATION INC.
("Parker")

SCHLEGEL ELECTRONIC MATERIALS, INC.
("Schlegel")

By: _____

By: _____

Name: _____

Name: _____

Title: _____

Title: _____

Date: _____

Date: _____

And,

PARKER INTANGIBLES, LLC
("Parker")

By: _____

Name: _____

Title: _____

Date: _____

21Apr08

**SCHEDULE 1**

**LICENSED PARKER PATENTS**

| Appl. No. | Filing Date | Pat./Publ. No. | Issue or Publ. Date | Country | Status |
|-----------|-------------|----------------|---------------------|---------|--------|
| 09/250,338 | 16 Feb 1999 | 6,248,393 | 19 June 2001 | United States | Granted |
| 09/883,785 | 18 Jan 2001 | 6,387,523 | 14 May 2002 | United States | Granted |
| 10/142,803 | 09 May 2002 | 6,521,348 | 18 Feb 2003 | United States | Granted |
| 10/381,609 | 11 Dec 2002 | 6,716,536 | 06 Apr 2004 | United States | Granted |
| 10/753,016 | 07 Jan 2004 | 6,777,095 | 17 Aug 2004 | United States | Granted |

**SCHEDULE 2**

**LICENSED SCHLEGEL PRODUCTS**

~~E XX 5,6 X X XXXX Series~~ <u>Fabric-Over-Foam</u> EMI Shielding Gaskets

**SCHEDULE 3**

**LICENSED SCHLEGEL PATENTS**

| Appl. No. | Filing Date | Pat./Publ. No. | Issue or Publ. Date | Country | Status |
|-----------|-------------|----------------|---------------------|---------|--------|
| 07/367,210 | 16 Jun 1989 | 5,045,635 | 03 Sep 1991 | United States | Granted |
| 07/604,562 | 26 Oct 1990 | 5,105,056 | 14 Apr 1992 | United States | Granted |

21Apr08

**SCHEDULE 4**

**LICENSED PARKER PRODUCTS**

**CHO-SHIELD**  **2000 Series Conductive Coatings**

**CHO-BOND**     **1000 Series Conductive Adhesives**

21Apr08

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and | ) | |
| PARKER INTANGIBLES, LLC | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:07-cv-266 |
| | ) | |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**FINAL JUDGMENT BY CONSENT**

Plaintiffs Parker-Hannifin Corporation and Parker Intangibles, LLC (jointly and severally "Parker") and Defendant Schlegel Electronic Materials, Inc. ("Schlegel") having executed a License and, Settlement Agreement and Release dated April ____, 2008 (the "Agreement") in settlement of this action and having consented to the entry of this Judgment, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Court has jurisdiction over Schlegel the parties and the subject matter of this action.

2.      Parker is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 6,248,393; 6,387,523; 6,521,348; 6,716,536; and 6,777,095 including all rights of recovery for infringement thereof.

3.      Schlegel is the owner of the entire right, title and interest in and to United States Letters Patent Nos. 5,045,635 and 5,105,056 including all rights of recovery for infringement thereof

4.      Each party shall bear its own costs and attorneys' fees.

5.      This Court retains jurisdiction of this matter as necessary to resolve disputes, if any, arising between Parker and Schlegel insofar as it relates to compliance by the parties with the terms of this Judgment and with the Agreement.

ENTERED, this _____ day of _____, 2008.

_____
United States Magistrate Judge

CONSENTED AND AGREED TO:

PARKER HANNIFIN CORPORATION          SCHLEGEL    ELECTRONIC    MATERIALS,
INC._____          INC.
("Plaintiff")                                                    ("Defendant")

By:    _____          By:    _____

Name:  _____          Name:  _____

Title: _____          Title: _____

Date:  _____          Date:  _____

And,

PARKER INTANGIBLES, LLC
("Plaintiff")

By:    _____

Name:  _____

Title: _____

Date:  _____


APPROVED AS TO FORM BY:

PLAINTIFFS' ATTORNEY                        DEFENDANT'S ATTORNEY

By:_____          By:_____
    Francis DiGiovanni (#3189)                George Pazuniak (#478)
    CONNOLLY, BOVE, LODGE & HUTZ               WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

    The Nemours Building                          222 Delaware Avenue, Suite 1501
    1007 N. Orange Street                         Wilmington, DE 19801
    P.O. Box 2207                                 (302) 252-4320
    Wilmington, DE 19899                          gpazuniak@wcsr.com
    (302) 658-9141
    fdigiovanni@cblh.com

Attorney for Plaintiffs                         Attorney for Defendant
Parker-Hannifin Corporation, and              Schlegel Electronic Materials, Inc.
Parker Intangibles, LLC

# EXHIBIT L

**Lennon, Jim**

| | |
|---|---|
| **From:** | Steve Nash [SNash@cblh.com] |
| **Sent:** | Thursday, May 08, 2008 5:51 PM |
| **To:** | Lennon, Jim |
| **Cc:** | Pazuniak, George; Tyreus, Martina; Frank DiGiovanni |
| **Subject:** | RE: Kenyon Deposition and Schlegel Financials |

Jim,

We disagree that there was an agreement between Parker and Schlegel as characterized by you. Parker has not, and cannot agree to Schlegel's proposal of a completely unrestricted license going forward. Parker is willing to grant a license on future-marketed products under reasonable terms and conditions. However, Schlegel has made it clear that anything short of a fully unrestricted license will not be acceptable. There has been no meeting of the minds in this regard, and there is no settlement agreement to enforce. Accordingly, Parker will oppose Schlegel's proposed motion.

We reiterate that, moving forward, Parker expects to grant Schlegel a covenant not to sue, limited to current products made, used, or sold in the U.S.

Parker will vigorously defend against Schlegel's claims of infringement as to the Schlegel patents. In this respect, Parker will soon supplement its discovery responses to disclose recently discovered prior art.

Please let me know when Schlegel desires to resume the exchange of e-discovery documents and sales summary information.

Regards,
Steve

Steven A. Nash
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
PO Box 2207
Wilmington, DE 19899

Tel: 302.888.6306
Fax: 302.658.5614
email: snash@cblh.com

Admitted in Pennsylvania

---

**From:** Lennon, Jim [mailto:JLennon@wcsr.com]
**Sent:** Thursday, May 01, 2008 4:11 PM
**To:** Steve Nash
**Cc:** Pazuniak, George; Tyreus, Martina
**Subject:** RE: Kenyon Deposition and Schlegel Financials

Dear Steve,

Further to my email of earlier today, and in light of Local Rule 7.1.1, we need to know whether Parker will oppose a motion by Schlegel to enforce the settlement agreement reached by the parties based on the attached communications.

Sincerely,
Jim

---

**From:** Lennon, Jim

5/21/2008

**Sent:** Thursday, May 01, 2008 3:48 PM
**To:** 'Steve Nash'
**Cc:** Pazuniak, George; Tyreus, Martina
**Subject:** Kenyon Deposition and Schlegel Financials

Steve,

I have discussed your request for additional information in the context of settlement with our client and the answer quite simply is no.  Your April 10th letter on behalf of Parker offered a full and complete cross-license to past, present and future marketed products in exchange for Schlegel to drop its demand for $350,000.  We accepted those terms and a deal was reached.  Parker is now hedging and this is unacceptable.

You possess sufficient information from the Kenyon deposition and you should have sufficient knowledge of the issues of this case to explain to John Molnar and others how this testimony impacts the validity of the Parker patents and so your request to disclose highly confidential outside-attorneys-eyes only information is unnecessary.  Additionally, Schlegel's financials were not an issue when the parties reached agreement on settlement terms and will not become relevant now because Schlegel will not allow Parker to change the terms of settlement.

Please let me know by the end of the day tomorrow whether Parker will honor the agreement established pursuant to your April 10th letter (i.e., a fully paid-up and complete cross-license under the patents-in-suit for past, present and future marketed products).

Sincerely,
Jim Lennon

Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
Direct Dial: (302) 252-4326
Direct Fax: (302) 661-7726
E-mail: JLennon@wcsr.com

**IRS CIRCULAR 230 NOTICE:** To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**CONFIDENTIALITY NOTICE:** This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

This e-mail and any attachment is intended only for use by the addressee(s) and may contain privileged and confidential information. Please email or call 302-658-9141 to advise the sender of a transmission error and delete the message and any attachments and any printouts. Any tax advice contained in this communication is not intended and cannot be used to avoid penalties under the Internal Revenue Code or to promote, market or recommend to another party any transaction or matter addressed herein.

5/21/2008

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PARKER-HANNIFIN CORPORATION, and PARKER INTANGIBLES, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 07-cv- 00266-MPT |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | ) ) | |
| Defendant. | ) ) | |
| ─────────────────────────── | ) | |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| PARKER-HANNIFIN CORPORATION, | ) ) | |
| Counter-Defendant. | ) | |

## COVENANT NOT TO SUE

Parker-Hannifin Corporation, by and through the undersigned counsel of record, hereby represents and warrants that it owns all right, title and interest in United States Patent Nos. 6,387,523, 6,521,348, 6,716,536, 6,777,095 and 6,248,393 ("the Covenanted Patents"); and, on behalf of itself and its assignees and any successor-in-interest to the Covenanted Patents (collectively hereafter included within the term "Parker"), hereby unconditionally and irrevocably covenants not to sue or otherwise assert against Schlegel Electronic Materials, Inc. ("Schlegel"), or its respective officers, directors, parents, subsidiaries and any successor-in-interest or assignee that acquires all or substantially all of Schlegel's business or assets related to fabric-over-foam electromagnetic interference ("EMI") shielding gaskets (collectively hereafter included in the term "Schlegel"), for

infringement, whether direct, contributory or by inducement, the following Covenanted

Patents:

- U.S. Patent No. 6,387,523;
- U.S. Patent No. 6,521,348;
- U.S. Patent No. 6,716,536;
- U.S. Patent No. 6,777,095; and
- U.S. Patent No. 6,248,393

*if and to the extent based upon Schlegel's past, present, or future making, having made,*

using, selling, offering for sale, or importing in or into the United States of any fabric-

over-foam EMI shielding gasket product that as of the date written below has been made,

used, sold, offered for sale or imported in or into the United States by or for Schlegel.

The undersigned acknowledges, stipulates, represents and warrants that this

Covenant Not to Sue shall upon delivery be immediately effective, absolute,

unconditional and uncontestable.


Dated: May 23, 2008          By: _____

Rudolf E. Hutz (#484)
Francis DiGiovanni (#3189)
Steven A. Nash (PA #85707 admitted *pro hac vice*)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141
rhutz@cblh.com
fdigiovanni@cblh.com
snash@cblh.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2008, I caused a copy of the foregoing document to be served upon the following in the manner indicated:

**BY E-MAIL AND HAND DELIVERY**
George Pazuniak
Anna Martina Linnea Tyreus
James Michael Lennon
Womble Carlyle Sandridge & Rice
222 Delaware Avenue
Wilmington, Delaware 19801
*Counsel for Defendant*

Steven A. Nash (PA #85707 admitted *pro hac vice*)