IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION, and PARKER INTANGIBLES, LLC, | : : : |
| Plaintiff, | : : |
| v. | : : C. A. No. 07-266-MPT |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | : : : |
| Defendants. | : : |
| _____ | : : |
| SCHLEGEL ELECTRONIC MATERIALS, INC., | : : : |
| Counterclaimant, | : : |
| v. | : : |
| PARKER-HANNIFIN CORPORATION, | : : |
| Counter-Defendant | : |
| _____ | : |

**MEMORANDUM ORDER**

**I. Procedural History**

Parker-Hannifin Corporation and Parker Intangibles, LLC ("Parker") filed a complaint against Schlegel Electronic Materials, Inc. ("Schlegel") on May 16, 2007 for alleged infringement of five Parker patents, numbered 6,387,523; 6,521,348; 6,716,536; 6,777,095; and 6,248,393. Parker filed an amended complaint on September 7, 2007, to which Schlegel responded on September 10, 2007, by denying

infringement and alleging that Parker's patents were invalid and unenforceable. Schlegel also counterclaimed that Parker infringed two Schlegel patents. After some initial discovery, the parties engaged in settlement negotiations which have lead to Schlegel's current motion to enforce a settlement agreement. Briefing on that motion was completed on June 26, 2008. This is the court's decision on Schlegel's motion.

## II. Statement of Facts

Schlegel's motion to enforce a settlement is brought based on an April 14, 2008 email sent by Parker which stated:

> This is to confirm our telephone discussion today. The parties have in principle reached an agreement on settlement in accordance with my letter of April 10. We will suspend the e-discovery production (due today) in favor of finalizing the details of the agreement. Parker will provide to you a draft of the agreement shortly.

Prior to that email, Parker initially contacted Schlegel to discuss potential settlement options. On March 28, 2008, Schlegel sent a settlement proposal to Parker, that outlined what had been previously discussed regarding settlement. That letter proposed, among other things, "the exchange of non-exclusive patent licenses between Parker and Schlegel for all cross-patents asserted in the litigation." The letter also demanded that Parker pay Schlegel $350,000 in return for a fully paid up license to its patents.

Parker responded on April 1, 2008 with a counter proposal offering to

> mutually release . . . for all past and presently marketed products [and] . . . future products that are the same or substantially the same as presently-marketed products. In this respect, the parties could instead grant to each other covenants not to sue if Schlegel would prefer.

Schlegel was not content with this offer because it was neither willing to abandon

its demand for a cash payment from Parker nor enter into an agreement that could result in a subsequent lawsuit on future Schlegel products based on the same Parker patents. As a result, Schlegel responded to Parker on April 3, 2008 and voiced those concerns:

> Schlegel will not surrender its well-supported infringement contentions against Parker without adequate compensation . . . . Your point that we should simply exchange mutual covenants not to sue under the patents in suit is acceptable, provided that it is a *permanent release* under the patents. We do not want to have to deal with the patents every time we improve or change one of our products. We would rather invalidate the Parker patents at this juncture and avoid the present issue in the future . . . Schlegel will need additional consideration to provide a covenant not to sue.[1]

Parker responded on April 10, 2008 with a letter which outlined a proposed settlement that addressed Schlegel's concerns.[2]

> In order to address your client's concern regarding the uncertainty of future litigation, Parker proposes the following. The parties exchange mutual releases from liability in connection with the subject matter of the lawsuit, and *dismiss* all claims and counterclaims *with prejudice*. In addition, *the parties grant to one another paid-up cross-licenses* under the patents-in-suit *covering all* past, present and future-marketed products. This compromise should alleviate Schlegel's concern over any lingering uncertainty about future disputes.[3]
>
> With regard to your client's insistence on receiving monetary compensation from Parker, that is unacceptable.

Schlegel orally accepted that offer on April 14, 2008, as memorialized in the email sent by Parker to Schlegel on that date acknowledging a settlement.

Thereafter, on April 22, 2008, Parker forwarded to Schlegel its first proposed

---

[1] Emphasis added.
[2] This letter is at the heart of Schlegel's enforcement motion.
[3] Emphasis added.

license and settlement agreement.  Schlegel submitted a revision on April 25, 2008.  Parker responded on April 28, 2008, with a proposed license and settlement agreement that accepted nearly all of Schlegel's changes.  However, in those draft agreements, Parker attempted to narrow Schlegel's license to include only "E XX 5,6 X X XXXX Series" EMI Shielding Gaskets in contravention to the broader "all past present and future-marketed products" language of its April 10, 2008 letter.

Schlegel did not accept Parker's April 28 proposal because it does not encompass all future products, and therefore does not address potential future litigation.  Thereafter, the parties continued negotiations, but were unsuccessful in drafting a final agreement.

On May 23, 2008, Parker filed a broad covenant not to sue which dismisses any claims by Parker against Schlegel for all products "made, used, sold, offered for sale or imported in or onto the United States by or for Schlegel," as of May 23, 2008.  Thus, Parker's affirmative patent claims against Schlegel are dismissed:  only Schlegel's inequitable conduct and patent infringement counterclaims remain.

The issue under consideration is whether the communications between parties constitute an enforceable settlement contract.

### III. Standard of Review

A district court has authority to enforce a settlement agreement entered into by litigants in a pending case.[4]  The standard of review for enforcement motions is similar

---

[4] *Leonard v. University of Delaware*, 204 F. Supp. 2d 784, 786 (D. Del. 2002); *see Hobbs & Co. v. American Investors Mgt.*, Inc., 576 F.2d 29, 33 (3d Cir. 1978).

to the standard applicable for motions for summary judgment.[5]

Therefore, a court may grant summary enforcement only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . the moving party is entitled to judgment as a matter of law."[6] The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."[7] The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary enforcement; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[8] If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.[9]

## IV. Analysis

### Objective Existence of a Contract

A settlement agreement is a contract enforceable by local law.[10] Therefore, Delaware law governs and provides the guidance as to whether a binding contract is formed. The analysis begins with whether the communications meet the three

---

[5] *Leonard*, 204 F. Supp. 2d at 786; *see Tieran v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991) ("The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same-both deprive a party of his right to be heard in litigation.").
[6] Fed. R. Civ. P. 56(c).
[7] *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995).
[8] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[9] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).
[10] *Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998).

requirements for a valid express contract: offer, acceptance, and consideration.[11] The circumstances giving rise to the contract are then viewed using an objective standard to determine if the parties manifested an intent to be bound.[12] Specifically, the objective standard is whether a "reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that agreement concluded the negotiations and formed a contract."[13] Therefore, whether an enforceable settlement exists requires a two step analysis. The first is whether the requisite offer, acceptance, and consideration were present. The second is whether an objective reasonable negotiator, in light of all the circumstances, would conclude that the parties were bound.

Parker's letter of April 10 presented an offer of settlement to Schlegel. That offer was accepted by Schlegel for the valuable consideration of it abandoning monetary compensation and granting a cross-license in its patents. The April 10 letter was the result of settlement discussions that began on March 28, 2008. During that time, the parties communicated over certain settlement terms. During those negotiations, an obvious, paramount concern of Schlegel was protection of its future products against Parker's patents-in-suit. That concern was clearly expressed to Parker no later than

---

[11] *Frazier v. American Airlines, Inc.*, 434 F. Supp. 2d 279, 286 (D. Del. 2006) (stating that the elements of a valid contract are: offer, acceptance and consideration); *see also Salisbury v. Credit Serv., Inc.*, 199 A. 674, 681 (Del. Super. 1937).

[12] *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986) ("Accordingly, our inquiry is the 'objective' one: whether a reasonable man would, based upon the 'objective manifestation of assent' and all of the surrounding circumstances, conclude that the parties intended to be bound by contract.").

[13] *Id*. at 1097.

April 3, 2008.

Parker acknowledged and addressed Schlegel's concern in the April 10 communication. A clear offer is reflected in that transmittal. Language in that letter which shows that an offer was made includes such statements as, "Parker proposes the following" and "if Schlegel rejects the current offer." Further, the letter directly addresses Schlegel's primary concern, protection of its future products. It also addresses an important issue for Parker, not paying a royalty to Schlegel for its patents. In exchange for Schlegel abandoning any monetary compensation, Parker offered an unrestricted license to all past, present, and future products.[14] Within four days, Schlegel unconditionally accepted the April 10 offer, as memorialized in Parker's April 14 email. According to that email, Parker acknowledged that "[t]he parties have in principle reached an agreement on settlement *in accordance* with my letter on April 10."[15] That communication clearly notes acceptance of the April 10 offer, which contained no limitation on the mutual cross licensing of the parties' patents-in-suit.

As discussed herein, the requirements of offer, acceptance, and consideration have been met. Parker's letter on April 10 constituted an offer, which Schlegel accepted as Parker memorialized in an email on April 14. The consideration included Schlegel waiving any compensation for infringement and the parties cross-licensing each other for the patents-in-suit. Therefore, an enforceable contract was formed.

**Essential Terms Are Not Missing**

Whether a contract or agreement is formed depends on whether the essential

---

[14] Parker expected the same in return from Schlegel for dismissal of its infringement claims.
[15] Emphasis added.

7

terms, as viewed by an objective, reasonable negotiator, are present.[16] The standard can be summarized as, "[a]n enforceable contract [is not] formed until 'all of the terms that the parties themselves regard as important' have been resolved."[17] This is a case-by-case inquiry without any mechanical guidelines. Though the standard may seem to require a comprehensive contract, a settlement agreement may be enforced although there are some matters left for negotiation, as long as, all essential terms are present.[18]

A contract is enforceable and contains all essential terms when it establishes the heart of the agreement. In *Loppert*, the parties engaged in settlement negotiations, but eventually reached an impasse regarding a certain issue.[19] The parties, however, did agree on the amount of stock options at a particular price through the following simple verbal exchange,[20] wherein the plaintiff confirmed that "[w]e have a deal at 1.1 million options at a strike price of $1.10," to which the defendant responded "[g]ood-I'll let the company know-have a good weekend." Later, the defendant disputed the formation of a contract.[21] The court found that a reasonable negotiator would believe that an agreement resulted from the prior negotiations and that final communication: "[i]n my

---

[16] *Loppert v. Windsortech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004) ("'[W]hether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations . . .'") (quoting *Leeds*, 521 A.2d at 1097) (alteration in original).

[17] *Robert's Enter., LP v. Fun Sport, Inc.*, No. 06-490 JJF, 2008 U.S. Dist. Lexis 18522, *6 (D. Del. Mar. 7, 2008) (quoting *Wilcher v. City of Wilmington*, 139 F.3d 366, 373 (3d Cir. 1998); *Leeds*, 521 A.2d at 1102 ("Until it is reasonable to conclude . . . that all of the points that the parties themselves regard as essential have been expressly or  . . . implicitly resolved, the parties have not finished their negotiations and have not formed a contract.")

[18] *Loppert*, 865 A.2d at 1289 (Del. Ch. 2004) ("A settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation.").

[19] *Id*. at 1285.

[20] *Id*.

[21] *Id*.

opinion, any reasonable negotiator would have concluded that when the parties reached agreement on the number of options, the negotiation of the settlement agreement was concluded."[22]

In the instant matter, the communications between the parties evidence Schlegel's concerns about potential future litigation and monetary compensation. Parker knew that those issues had to be addressed, and as in *Loppert*, responded with a settlement offer that was the natural result of prior discussions. Under an objective analysis of the negotiations that occurred between Parker and Schlegel, a reasonable negotiator would find that the April 10 letter constituted an settlement offer which concluded those prior negotiations. In fact, Parker acknowledged that its offer should alleviate Schlegel's concern over any lingering uncertainty about future disputes.

Furthermore, Parker's conduct after the April 10 letter evidences a meeting of the minds. First, Parker confirmed Schlegel's oral acceptance on April 14 in an email which referenced the April 10 terms. It did not clarify, modify or limit those terms, in particular the language, "the parties grant to one another paid-up licenses under the patents-in-suit covering *all* past, present and future-marketed products."[23]

Parker contends that essential terms, often included in licensing agreements, were missing from the April 10 letter and as a result no enforceable agreement was reached. During the drafting process, a number of those terms which Parker now deems as essential were either not included in its initial draft of the licensing/settlement agreement or, when rejected by Schlegel on the first review, were not re-suggested.

---

[22] *Id*. at 1286-7.
[23] Emphasis added.

Such terms which Parker argues as essential, that is, the number of units or sales volumes to be licensed, field of use terms, territorial scope of the license, representations and warranties and the manner and means whereby disputes would be resolved were absent in Parker's first settlement draft of April 22.  Other provisions, such as , whether the license is sublicensable, assignable, transferrable, personal or inures to the benefit of a successor-in-interest were either minimally modified or not changed at all in Schelgel's responsive redraft of April 25.[24]  In any event, Parker did not modify those sections further in its second draft of April 28, but accepted Schlegel's suggestions and wording.

Certain allegedly essential provisions, such as, those dealing with termination and indemnity, were rejected in their entirety by Schlegel.  Again, Parker did not re-include those sections in its second draft, but accepted Schlegel's deletion.

Thus, Parker's conduct during the drafting process demonstrates that terms it now claims to be necessary for an agreement obviously were not.  Moreover, it shows that parties had reached a meeting of the minds to the essential provisions.  In the end, Parker only attempted to limit scope of the license by restricting the Schlegel products that were licensed, which effected future-marketed products, despite the unconditional language of the April 10 letter.  Parker has not shown that its accepted offer was indefinite or incomplete.  Although details are absent from the April 10 letter that may have required further negotiation, the essential terms of the agreement are clear and

---

[24] A number of the changes appear to be sentence structure or language preference modifications.  In any event, such terms had been implicitly resolved by the April 10 and April 14 correspondence.

show an objective meeting of the minds as to those terms.  Schlegel is entitled to enforcement of those terms.  Therefore, for the reasons contained herein,

    IT IS ORDERED and ADJUDGED that Schlegel's motion to enforce the settlement agreement (D.I. 37) is GRANTED.


Date:  December 9, 2008        /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE